# Drennen & Co. *v.* Smith.

*Action to recover Damages for Personal Injuries.*

1. *Construction of contract; duty of court when no dispute as to its terms.*—Where the terms of a contract are undisputed and no adverse inferences can be drawn therefrom, it is the duty of the court to construe it.

2. *Same; master and servant; when relation shown to exist.*—In an action to recover damages for personal injuries suffered while at work in a coal mine, where it is shown that at the time of the injury the plaintiff was at work under a contract his father had made with the defendant, which stipulated that the plaintiff was to be paid for coal mined at a certain price per ton, that the father was to furnish the

[Drennen & Co. v. Smith.]

tools, powder and other materials necessary for the mining, and the defendant's "bank boss" was to have control of the work, the plaintiff occupied the relation of employé towards the defendant and not that of an independent contractor, and he can, therefore, maintain an action under the employers' liability act.

3. *Action for negligence; master and servant; general affirmative charge; negligence question for the jury.*—When there is conflict in the evidence, or different inferences may be fairly drawn from the un-contradicted testimony, the questions at issue must be left to the determination of the jury; and in an action against the owners of a mine, to recover damages for personal injuries to one of its employés, which resulted from a fire in the mine, when there is a material conflict in the evidence as to whether there was negligence after the discovery of the fire which resulted in the injury complained of, the general affirmative charge in favor of the defendant is properly refused.

4. *Master and servant; negligence of superintendent; what necessary to sustain action.*—To maintain an action under subdivision 2 of section 2590 of the Code of 1886, the injury complained of must be caused by the negligence of some person in the employ of the master as the superintendent, and while in the exercise of his duties as such superintendent; and if the injury is caused by the negligence of some one not in the employ of the master, or by one in such employment, but without any superintendence intrusted to him, the action can not be maintained.

5. *Same; same; charge to the jury in an action by an employé against his employer to recover damages for personal injuries.*—Where an injury is alleged to have been caused by the negligence of the defendant's superintendent while in the exercise of such superintendence, a charge which instructs the jury that "If the evidence leaves the minds of the jury in doubt as to whether plaintiff's injuries were caused by said" superintendent's negligence, or "by the negligence of some one else," is erroneous and properly refused; since the jury may have had some doubt as to the person whose negligence caused the injury, and yet have been reasonably satisfied that it arose from the negligence of the superintendent.

6. *Charge to the jury; not erroneous when assuming as true undisputed facts.*—A charge to the jury which assumes as true a fact as to which there is no conflict in the evidence, is not objectionable because of such assumption.

7. *Same; explanatory charges.*—The giving of charges which, though awkwardly drawn, state a correct proposition, will not work a reversal. since the tendency of such charges to mislead the jury can be obviated by explanatory charges requested by the other party.

APPEAL from the City Court of Birmingham.

Tried before the Hon. H. A. SHARPE.

This action was brought by the appellee, Edgar Smith,

by his next friend, against the appellants, Drennen & Co., a partnership. to recover damages for personal injuries, alleged to have been suffered by the plaintiff by reason of the negligence of the defendants or their employès.

The injuries suffered by the plaintiff were received while he was at work in the defendants' mines, and were caused by a fire in said mines, which caused a large amount of smoke to accumulate in the mines, by which smoke the plaintiff was smothered and asphyxiated.

The substance of the two counts of the complaint, upon which the case was tried, are sufficiently stated in the opinion.

It was shown by the evidence that at the time the fire in the mines originated, the plaintiff was at work in what was known as the "Fourth West Entry," that is the last entry towards the bottom of the slope. The description of the mine, as adduced from the evidence shown by the bill of exceptions, is as follows: The mine is worked by what is called a slope or hole in the ground inclining downward. On the left side of the slope there was a man-way going down the full length of the mine, 1,200 or 1,400 feet, and just to the left of the mouth of the slope and just above the mouth of the man-way, there is what is called and known as a suction fan used for ventilating purposes. The use and mode of operating said fan was for carrying fresh air down into the mine. The fan was made to revolve by a small steam engine, and by its revolutions caused the air that was down in the mine at the foot of the slope to come up the man-way and out through the fan house, and the other air would go down the slope and take its place; thus creating a current down the slope, which was called the down cast, and the man-way, which is called the up cast. The steam engine which ran the fan was connected to the boilers of the hoisting engine, which was situated 200 or 300 feet from the fan, where all the steam was generated. A valve right at the fan house and inside of the fan house was used to cut off or to let on the steam for the purpose of stopping the fan from running. From the boilers a larger or main steam pipe line went to the mines and down into the mines, on the right hand or east side of the slope, which was the opposite side from the man-way, and passed down through the air- course, which steam pipe line extended along and down the air course nearly

[Drennen & Co. v. Smith.]

to the bottom of the mine for operating pumps down in the mine, and for the purpose of causing a current of air up the air course east of the slope, which served and was used not only for operating the pumps, but also caused a current of hot air to rise and go out of the air course, and in that way ventilate the east side of the mine. At a point very near where the main steam line enters the mine on the east or right hand side, a small pipe line running across to the fan was attached, and near this point of connection there was another valve which was also used for cutting off the steam from the fan. Down the slope ran two parallel tram tracks, consisting of iron rails upon which ran tram cars which were drawn up and down in the mine for the purpose of hoisting coal. On the west side of the slope the first entry or cross-entry was called the first or upper "west," about 300 feet from the mouth of the mine ; further on down the west side was the second west entry, which was a little below and nearly opposite the entry on the east side, known as the old first east entry. The old first east entry had been for nearly two years an abandoned entry, no work having been done therein. About thirty or forty feet from where the old first east entry opened into the slope was what is called a "bradish" or door across it, which was made of planks, for stopping up the mouth of the entry and for ventilating purposes, and it was this door that caught on fire and was burning. Nearly opposite this old first east entry and the bradish that was burned was the second west entry above referred to, some 300 feet below the first west ; and still further down on the west side about 300 below the second west entry was a third entry, and about 300 feet lower down was the fourth entry, which was the last entry on that side.

The plaintiff's evidence was to the effect that Supt. Reid was negligent in not having the suction fan stopped as soon as he discovered that the mine was on fire ; and that if the fan had been stopped, the smoke would have gone out of the slope, while with the fan going, the current of air running down the slope carried the smoke down in the mine. The other facts of the case are sufficiently stated in the opinion.

Upon the introduction of all the evidence, the defendant requested the court to give, among others, the following written charges, and separately excepted to the court's

refusal to give each of them as asked: (1.) "The court charges the jury that, under the evidence in this case, the plaintiff is not entitled to recover under the 6th count of the complaint." (2.) "The court charges the jury that, under the evidence in this case, the plaintiff was not a servant or employé of the defendant." (7.) "If the jury believe that the plaintiff's injuries were proximately caused by the smoke in the man-way, and that such smoke was carried or sucked into the man-way, not by any revolving of the fan, before John House shut it down, by the order of John Reid, if the said John House did so shut it down by John Reid's order, but by reason of the fan having been set in motion a second time by some one unknown to and unauthorized by said Reid, then, although said Reid may not have caused said fan to be stopped as promptly as a reasonably prudent superintendent would have stopped it, the plaintiff is not entitled to recover in this action." (11.) "The court charges the jury, that if the jury believe from the evidence that at the time of the accident to the plaintiff, he was at work in the Mary Lee Mines, which was being operated by the defendant, under the contract made by the father of the plaintiff either with Mel. Drennen or the superintendent of the said mines, whereby and under which the agreement was, that the plaintiff, together with his brother, who were miners, were to cut coal in the said Mary Lee mines, and furnish their own powder and other tools and implements which were to be used by them in cutting coal, and to receive for each ton of coal mined by them 42½ cents, and that the only superintendence over their work which the defendants reserved, and were exercising was, that the superintendent, or mining boss of said mines, was to look after the mining of said coal, so as to see that it was done in a reasonably proper manner, so as not to injure the mine, then the court charges you that, so working under that contract, the plaintiff was not a servant in the employ of the defendant, but was an independent contractor." (14.) "That under the pleading in this case, the burden is by law upon the plaintiff to reasonably satisfy the jury, not only that John Reid, the defendant's superintendent, was negligent as charged in the complaint, but that such negligence was the cause of plaintiff's injuries. And if the evidence leaves the mind of the jury in doubt as to

[Drennen & Co. v. Smith.]

whether the plaintiff's injuries were caused by said Reid's negligence, or by the negligence of some one else' who set the fan in motion after Reid had caused it to be stopped, then their verdict must be for and in favor of the defendants."

There were verdict and judgment for the plaintiff. The defendants appeal, and assign as error the several rulings of the trial court to which exceptions were reserved.

JAMES E. WEBB, for appellant.—1. The plaintiff was not entitled to recover under the sixth count of the complaint. The plaintiff was not an employé of the defendants under the allegations of this complaint.—*Harris v. McNamara*, 97 Ala. 186; *T. C., I. & R. R. Co. v. Hayes*, 97 Ala. 201; *Mobile & Montgomery R. Co. v. Smith*, 59 Ala. 245; *A. G. S. R. R. Co. v. Carroll*, 97 Ala. 129; *Smoot v. M. & M. R. Co.*, 67 Ala. 17.

2. In the 19th count it is averred that it was the negligence of Reid in causing or allowing the ventilator fan to run after the fire was discovered, and that such negligence by Reid was committed while in the exercise of his superintendence. And the 19th count was a count framed under sub-section 2 of section 2590 of the Code of 1886. If the negligence which caused the plaintiff's injuries was not the negligence of one who had superintendence intrusted to him, then under the 19th count no recovery could be had.—*City Council of Sheffield v. Harris*, 101 Ala. 570; *Ga. Pac. R. Co. v. Davis*, 92 Ala. 300; *Holland v. Tenn. C., I. & R. R. Co.*, 91 Ala. 444; *Smoot v. M. & M. R. Co.*, 67 Ala. 17; *M. & M. Co. v. Smith*, 59 Ala. 245.

BOWMAN & HARSH, *contra*.—The court left it to the jury to say whether plaintiff was a servant or a contractor, and we submit that upon the evidence of plaintiff's father and of one of defendants the question was properly left to the jury. At any rate the court can not find upon the record that the lower court erred, for it is shown by the testimony of Mr. Drennen that plaintiff's father was sent by him to the superintendent in reference to putting the boy to work, and while the contract between them is referred to it is not shown with such

26

fullness as could enable this court to overcome the presumption that the lower court was correct.

The undisputed evidence is that Reid, whose negligence is relied on, was defendants' superintendant and was in the exercise of such superintendence in reference to the running of the fan. Therefore defendants are liable to plaintiff under subdivision two, section 2590, Code of 1886, even though plaintiff be a servant, for all actual damages suffered by him as the proximate result of Reid's negligence.

Fully as much, but nothing more, follows the contingency of plaintiff being an independent contractor. *Pate v. McConnell*, 106 Ala. 449 ; *Donovan v. S. & N. Ala. R. R. Co.*, 79 Ala. 429 ; *S., A. & M. R. Co. v. Buford*, 106 Ala. 303 ; *Bernstein v. Humes*, 78 Ala. 134 ; *Tenn. C., I. & R. R. Co. v. Hayes*, 97 Ala. 201 ; *Cowen v. Eartherly Hardware Co.*, 95 Ala. 324 ; *McCauley v. Tenn. C., I. & R. R. Co.*, 93 Ala. 356 ; *DeLacy v. Tillman*, 83 Ala. 155 ; *England v. Hatch*, 80 Ala. 247.

HARALSON, J.—There are many assignments of error, but we confine ourselves to such of them as are insisted on by appellants' counsel.

The case was tried and went to the jury alone, on the 6th and 19th counts in the complaint. The 19th count was framed under the second sub-division of section 2590 of the Code, and in it the plaintiff alleged he was a servant or employé of defendants in the capacity of a miner or coal digger, and at the time of the fire was engaged in said business of defendants, and the injury complained of is attributed to the negligence of one Reid in the service or employment of defendants, who had superintendence, &c. The 6th count alleges that plaintiff was working in the mine of defendants, but not as a servant or employé, and counts upon the negligence merely of defendants in running its ventilator fan, etc. All the testimony introduced on the trial, purports to be set out in the bill of exceptions, as abstracted.

James M. Smith, the father of plaintiff, testified substantially that plaintiff was eighteen years old ; that he (the father) made a contract with defendants by which his two boys, one of whom was the plaintiff, should mine coal for defendants at 42½ cents per ton ; that witness was to furnish "the tools and powder and stuff,

[Drennen & Co. v. Smith.]

and the bank boss was to have control of the work;" that he made arrangements that his sons were to work in a room with Whitfield Moore, who was an expert miner; that they got one-half, and Moore, one-half of the coal cut; that defendants paid for the coal, dug by plaintiff, by checks which were received and collected by witness. The plaintiff testified, that he and his brother, Oscar, were running a check of their own; that they got pay for one-half of the coal dug in the room, and that Moore got the other half. Mel. Drennen, one of the defendants, testified that plaintiff's father wanted work in the mine for his two boys, and witness referred him to the superintendent, Reid. Ustick, a witness for plaintiff, testified that one Whaling was the bank boss inside the mine, and that he (Whaling) had superintendence of the inside work. The foregoing is all the testimony in the abstract bearing on the contract under which plaintiff worked for defendants.

When the testimony closed, the defendants asked the court in separate charges to instruct the jury, that under the evidence in this case; the plaintiff was not entitled to recover either under the 6th or the 19th counts.

The testimony as to the contract was without conflict. As stated in the language of James M. Smith, the father of the plaintiff, who made the contract, it was, "that he hired the plaintiff to work in the mines for Drennen & Co.; that the contract between him and Drennen & Co. was, that his two sons, including plaintiff, were to cut coal for 42½ cents per ton for all the coal they could dig, and that he (Smith) was to furnish the tools and powder and stuff, and the bank boss was to have control of the work."

It was the duty of the court, the terms of the contract being undisputed, from which adverse inferences could not be drawn, to construe it.—*Foley v. Felrath*, 98 Ala. 176, 181, and authorities there cited. We apprehend, that under the terms of said hiring, as stated above, the plaintiff's son was an employé of the defendants, and not an independent contractor; and that the charge which requested, that under the evidence, there could be no recovery under the 6th count, should have been given. This, it may be here more conveniently stated, disposes of charges, such as the 2d and 11th, asked by defendants, based on the theory that under the evidence, a recovery might be had under the 6th count.

[Drennen & Co. v. Smith.]

It can hardly be doubted that the testimony justified the court in leaving the jury to determine the question of negligence *vel non*. Even if the testimony had been undisputed, if there was room for an inference of negligence, the jury should have been left to determine it. *Eureka Co. v. Bass*, 81 Ala. 200 ; *Mayor, &c., v. Cary*, 84 Ala. 469. · But there was considerable conflict in the testimony on this point. The running of the suction fan, as the facts show, caused a draught upward through the man-way, and this in turn caused a current of air down the slope. There was also a current of air up the east side of the slope caused by the hot-pipe. The fire was on the east side of the slope in an old abandoned entry about six hundred feet below the surface. It is shown that the smoke passed from that old entry into the slope, and it was carried by the draught, we may presume, to the bottom of the mine and went thence into the man-way. It is apparent that the running of the fan would tend to drive the smoke to the bottom of the mine where the plaintiff was at work. It would seem, therefore, that as soon as the agents of defendants in charge of the mine learned where the fire was, it was their duty to stop the running of the fan. The experts who testified, however, differed as to what was the superintendent's duty when it was discovered that there was a fire in the mine. Some of them said that he should have immediately stopped the fan. Others said that he should have first ascertained where the fire was and if there were no men in the mine above the fire, then the fan should have been stopped. Others thought that it was his duty to go and make an examination before determining whether or not to stop the fan. The testimony was conflicting as to how much time elapsed after the fire began before the superintendent learned of it and learned where it was ; as to whether or not he acted promptly ; as to when the fan was stopped, and as to whether or not it was started again. It seems reasonably clear from the testimony that it was stopped twice, and it must, therefore, have been started after it was stopped the first time. It is not clear who started it the second time. There was much excitement prevailing and a large congregation of people about the mouth of the mine. There was room for an inference that the defendants' agents were not reasonably careful

in seeing that the fan was not started a second time, even if they properly stopped it in the first instance. It was, therefore, a matter for the jury to determine whether or not the defendants were negligent, and the general charge as requested by defendants on the 19th count was properly refused.

If not abstract, charge No. 7, which was refused, asserts a correct proposition of law. To be actionable under sub-division 2, of section 2590 of the Code of 1886, the injury must be caused by the negligence of some person in the employment of the master, "who has superintendence entrusted to him, while in the exercise of such superintendence." The negligence must be that of some agent or employé, who is in the exercise of superintendence, and to whose negligence in such exercise, the disaster is traced. If caused by the negligence of some one not in the employment of the master, or by one in his service as employé, without any superintendence entrusted to him, the master would not be liable.—*The City Council v. Harris*, 101 Ala. 570. This principle the charge was intended to assert, and was evidently framed under the 19th count. We have, however, been unable to find in the abstract a statement of the evidence tending to show that the smoke was carried or sucked into the man-way, not by the revolving of the fan before House shut it off by Reid's order, but by reason alone of its having been set in motion a second time by some one unknown or unauthorized by Reid. For this reason it was properly refused.

The 14th was also .properly refused. The jury may have had some doubt as to the person whose negligence caused the injury, and yet have been reasonably satisfied that it arose from the negligence of Reid, the superintendent.

At the instance of the plaintiff the court gave a charge numbered 18, which was as follows: "If the jury believe the evidence, *that* defendants are responsible for the proximate consequences of negligence on the part of John Reid, if any, in the exercise of his authorized superintendence, on the 20th day of June, 1894, no matter what the defendants' connection with the mine may have been before that day." The word "that" employed in the charge, is evidently a clerical error, which is self-corrective. It should be read "the," or

"then" or entirely omitted. A correct proposition of law is asserted here, as seems to be conceded by appellants' counsel, and is applicable to the 19th count. The proof showed without dispute that Reid was the superintendent in charge of the mine, and his negligence, therefore, was attributable to defendants. It is contended that this charge assumed as a fact that Reid was the authorized superintendent of defendants, but there was no conflict in the proof as to this fact. The charge is awkwardly framed, but it was the duty of the defendants to ask an explanatory charge, if of any tendency to mislead.—*DeLacy v. Tillman*, 83 Ala. 155.

For the errors indicated, the judgment of the court below is reversed and the cause remanded.

Reversed and remanded.