## CHICAGO, R. I. & P. RY. CO. v. BENNETT.

No. 1645. Opinion Filed September 17, 1912.

Rehearing Denied December 17, 1912.

(128 Pac. 705.)

1. **MASTER AND SERVANT** — Injuries to Servant — Relation of Parties—''Independent Contractor.'' An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work (quoting Words & Phrases, vol. 4, p. 3542).

2. **SAME.** In determining whether the relation between a proprietor and one doing work for him is that of master and servant, or proprietor and independent contractor, while the court may take into consideration the manner of payment, whether by the day, week, month, etc., with a reservation of the right to discharge, or whether there was to be payment by the piece or entire job, yet the mode of payment is not a decisive test by which to determine the question. The test lies in whether or not the contract reserves to the proprietor the power of control over the employee. The mere fact that the work being performed by an employee at the time he was injured was done by the piece or job, as by payment of a stated price per ton for shoveling coal into an engine tender, does not deprive him of the character of an employee, where he was a mere servant carrying out his employer's will and instructions.

3. **SAME.** The employer's intention to retain the right of exercising control over a person performing work for him, and hence creating the relation of master and servant between the parties, will be inferred when it appears the employment was general, and not based on a contract to do a certain piece of work on certain specified terms in a particular manner and for a stipulated sum.

4.   **SAME—Questions of Law or Fact.**  Where the contract of employment involved is in writing, the question of the relation created by it between the parties is ordinarily one of law for the court; but if the contract is oral, and the evidence as to its terms is conflicting, or where a written contract has been modified by the practice under it, the question should be submitted to the jury under proper instructions. But, although the contract may be oral, if there is no dispute as to its terms, or if but one inference can be drawn from the evidence, then the question of whether the relation is that of employer and independent contractor, or that of master and servant, is for the court.

5.   **SAME—Care Required of Master.**  A master is under an obligation to take care that the premises in which, and the appliances and instrumentalities with which, he requires his servant to work shall be reasonably safe for the purposes intended.

(Syllabus by Brewer, C.)

*Error from District Court, Greer County;*
*G. A. Brown, Judge.*

Action by E. S. Bennett against the Chicago, Rock Island & Pacific Railway Company. Judgment for plaintiff, and defendant brings error. Affirmed.

*C. O. Blake, H. B. Low, R. J. Roberts,* and *W. H. Moore,* for plaintiff in error.

*H. M. Thacker* and *Chas. M. Thacker,* for defendant in error.

Opinion by BREWER, C.   The defendant in error, as plaintiff below, recovered judgment against the plaintiff in error, as defendant, in the sum of $750 on account of personal injuries received in defendant's yards at Mangum, while loading a locomotive tender with coal from a box car. The coal had been loaded into the box car, without using grain or inside doors, and the heavy lump coal thus loaded came into contact with sliding side doors of the car, bulging the doors out against the sides of the groove upon which it was to be moved. On the night of the injury the engine to be coaled was placed on the north side of the car, but the north door was bulged and broken so it could not be opened. The engine was then placed on the south side of the car. The south door was sprung and bulged to some extent, but was not

broken so far as could be seen, and plaintiff, with the assistance of a yardman, attempted to open the south door by sliding it back. It was tight, and would not move, so plaintiff inserted the point of a small iron pick in an attempt to slide the door, when it suddenly broke loose, evidently from the great pressure of the heavy lumps of coal inside, and the door fell on plaintiff, breaking his arm, and causing other injuries.

The defendant, after general denial, set up the special defense of independent contractor. In the petition in error defendant sets out thirteen specifications of error, and in presenting its argument thereon says in its brief:

"In presenting the errors to this court on appeal the plaintiff in error desires to urge them as a whole without urging any one specifically and without waiver of any," etc.

The argument and authorities are submitted, however, under three subheads, a consideration of which will dispose of the case. They are: First, the plaintiff is an independent contractor, and not a servant of defendant; second, it was the duty of the court to submit the question of independent contractor to the jury; third, the carrier is not responsible for loading or unloading of cars.

1. We will consider the questions in their order; and to determine the relation existing between the plaintiff and the defendant—that is, whether he was a servant, or an independent contractor—we will refer to the evidence. The plaintiff was a coal heaver. His contract of employment was oral. He says he heard there was a vacancy, and applied in person for the job; that he was told to go to work that night, that the company would try him and see how long he would stay. Plaintiff says nothing was said at the time about how he was to be paid, whether by the day, week, month, or ton, but that shortly thereafter he learned he was to be paid by the ton. The station agent said he hired plaintiff, and told him his pay would be by the ton. The station agent and night watchmen both disclaimed any authority to direct plaintiff in his work. It was also shown that upon occasions plaintiff had hired a neighbor, paying him a pig to help him shovel coal. It appears that as engines came in the engine

watchmen would run them to some convenient place in the yards, then draw a car of coal alongside, and plaintiff would then shovel coal into the tender of the engine. It is also shown that the station agent directed the engine watchmen which cars to unload, and the watchmen would then direct plaintiff what cars to unload first, etc.; that plaintiff would assist in switching engines and cars, and in spotting them to be coaled; and that the other employees sometimes assisted plaintiff in his work. The lantern and other instrumentalities for plaintiff's work were furnished by the defendant.

The defendant bases its contention in the main that plaintiff was an independent contractor on the fact that he was paid by the ton for his work, and the evidence of the station agent that he did not give plaintiff any direction or exercise any control over him as to how he unloaded the coal into the tenders. The generally accepted rule of law is (section 622, 1 Thomp. Neg.):

"An independent contractor, within the meaning of this rule, is one who renders service in the course of an occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. * * * In every case the decisive question is: Had the defendant the right to control, in the given particular, the conduct of the person doing the wrong? Does he reserve to himself the essential powers of a master? It is but another form of language expressing the same idea to say that the true test to determine whether one who renders service to another does so as a contractor or not is to ascertain whether he renders the service in the course of an independent occupation, representing the will of his employer only as to the result of his work, and not as to the means by which it is accomplished. On this question the contract under which the work has been done must speak conclusively in every case, reference being had, of course, to surrounding circumstances. This being so, the mere fact that the agent who did the injury carried on a separate and independent employment will not absolve his principal from liability. 'If such were the rule, a party would be exempt from responsibility even for the negligent acts of his domestic servants, such as his cook, coachman, or gardner.'"

And, further, the same author in discussing the manner of payment as bearing on the relation between the parties says:

"Sec. 629. In determining whether the relation is that of master and servant, or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment, whether payment was to be made by the day, week, month, etc., with a reservation of the power to discharge, or whether there was to be a payment by the·piece or by the entire job. But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employee. That the mere fact that the work being performed by an employee at the time he was injured was done by the piece or job, as by payment of a stated price for each car when loaded, does not deprive him of the character of an employee, where he was a mere servant carrying out the employer's will and instructions."

Among the definitions selected and approved in 4 Words & Phrases, 3542, we find the following:

"An independent contractor is one who, exercising an independent employment, contracts to do a piece of work according to his own methods, and without being subject to the control of his employer except as to the result of the work. *Waters v. Pioneer Fuel Co.*, 52 Minn. 474, 55 N. W. 52, 38 Am. St. Rep. 564; *Indiana Iron Co. v. Cray*, 19 Ind. App. 565, 48 N. E. 803, 807."

It has been seen that the mode of payment, as in this case by the ton, is not a test of the relation between the parties; nor is such fact in any way inconsistent with the idea of that relation being one of master and servant. The station agent said he did not control or direct the method or detail of plaintiff's work, and that other employees in the yard merely designated the cars to be unloaded. But the test is not whether the defendant did in fact control and direct plaintiff in his work, but is whether it had the right under the contract of employment, taking into account the circumstances and situation of the parties and the work, to so control and direct him in the work. Moll on Independent Contractors, 35; *Linnehan v. Rollins*, 137 Mass. 123, 50 Am. Rep. 287. A case directly in point is that of *C. P. Hamilton et al. v. Oklahoma Trading Co.*, 33 Okla. 81, 124 Pac. 38, and the numerous authorities cited and quoted from. See, also, *Chas. T. Derr Const. Co. et al. v. Gelruth*, 29 Okla. 538, 120

Pac. 253. In this case, would an officer or manager of defendant, who might have seen plaintiff heaving coal carelessly or wastefully, and loading the tender improperly, have had the right to require him to use a better method? If such manager saw him loading one tender, and preferred that he load another first, would he not have at once commanded and enforced obedience to his wishes, thus changing plaintiff's plan and method of work? Is it conceivable that a railroad in hiring an unskilled man to perform one of the simplest tasks of hard manual labor requiring scarcely more than muscle in its performance, yet one that must be constantly performed in the yards to keep trains moving, would absolutely relinquish all right of control and direction? We hardly think so. In Moll on Independent Contractors at page 76 it is said:

"The ground upon which some decisions may be said to have proceeded was that, in view of the humble industrial status of the persons employed, and the simple character of the work to be done, the only admissible inference was that the employers intended to retain the right to give directions in regard to the details of the work"

—citing *Richmond v. Sitterding,* 101 Va. 354, 43 S. E. 562, 65 L. R. A. 445 and note, 99 Am. St. Rep. 879. The same author (Moll) at page 77 continues:

"It is held in Massachusetts that the employer's intention to retain the right of exercising control, and hence creating the relation of master and servant, should always be inferred when it appears the employment was general, and not based on a contract to do a certain piece of work on certain specified terms in a particular manner and for a stipulated price"

—citing *Brackett v. Lubke,* 4 Allen (Mass.) 138, 81 Am. Dec. 694; *Dane v. Cochrane, etc., Co.,* 164 Mass. 453, 41 N. E. 678, and numerous other cases.

In this case the employment was general. Many or few engines were to be provided with coal according to the demands of business. There was no particular manner of doing the work; no particular place in the yards for it to be done. The work was to be done where and when and as much of it as the needs of the employer might require. If this coal heaver was a contractor.

and not a servant, every coal miner in this state occupies toward the company for which he works the same relation. It is common knowledge that the miner furnishes his entire equipment of tools, his oil, and lamp, and his powder, fuse, and caps, and receives a stipulated price per ton for the coal mined; yet we doubt if any one would now seriously urge in this jurisdiction, where the courts are full of mining cases, that the coal miner sustains that relation to his company. It has been held, however, that he does not sustain such relation. *Drennen & Co. v. Smith*, 115 Ala. 396, 22 South. 442; *Lake Superior Iron Co. v. Erickson*, 39 Mich. 492, 33 Am. Rep. 423. We therefore conclude that in this case it is shown that the relation existing between the parties at the time of the injury was that of master and servant.

2. What has been said on the first proposition relieves us of any extended consideration of the second; *i. e.,* that it was reversible error to refuse to submit to the jury the question of whether plaintiff was a contractor or a servant. We think it can be correctly said that, where the contract of employment is in writing, the question of the relation created by it between the parties is ordinarily one of law for the court; but if the contract is oral, and the evidence is conflicting, or where a written contract has been modified by the practice under it, the question should be submitted to the jury under proper instructions. 1 Thompson on Neg. 640; Moll, Ind. Contr. secs. 28, 29, and authorities cited. But although the contract may be oral, if there is no dispute as to its terms, or if but one inference can be drawn from the evidence, then the question whether the relation is that of employer and independent contractor, or that of master and servant, is for the court. Moll, Ind. Contr. 28, 29; *Folley v. Felrath*, 98 Ala. 176, 13 South. 485, 39 Am. Rep. 39, and authorities cited; *Drennen & Co. v. Smith*, 115 Ala. 403, 22 South. 442. The evidence in this case presents no substantial conflict relative to the employment of plaintiff; and, taking into consideration the nature and character of the work, the duties involved, the methods pursued, and the necessary interest and concern of each of the parties in the time, place, and manner of doing the work and in the results to be accomplished, we have no hesitancy in holding

that but one reasonable inference could be drawn from the evidence as to the relation of the parties, and that is that such relation was that of master and servant. This being the case, the court very properly under the facts presented refused to submit the question to the jury.

3. The remaining point contended for by defendant—that it was not responsible for a negligent loading of the car by the consignor—loses much, if not all, of its force and applicability when it has once been determined that the plaintiff was its servant. The question, that relation once established, becomes one of safe place in which to work and safe instrumentalities and appliances with which to work, and the doctrine and rules of law, relative to the duty of a carrier to the consignor or consignee of freight, or the consignee's servants in unloading the same after a delivery to him, where the question of negligent loading by the consignor is presented, are no longer controlling, if indeed, applicable at all. We have read *Gulf, T. & P. Ry. Co. v. Wittnebert,* 101 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858, 16 Ann. Cas. 1153, cited by defendant, and do not think it in point here.

The duty of the master involved in this case is stated thus in Labatt on Master & Servant, sec. 14:

"The rule defining the nature and extent of the master's obligation with respect to the condition of the agencies of his business may be stated in its most general form as follows: The degree of care required of an employer in protecting his employee from injury is the adoption of all reasonable means and precautions to provide for the safety of his servants while in the performance of their work. What shall be deemed 'due care' is to be 'estimated on a consideration of the facts of each particular case.' It is 'such care as reasonable and prudent men would use under similar circumstances.' The care which such a man is for the purposes of this rule assumed to exercise is that which he would exercise for his own safety if the instrumentality in question was furnished for his own personal use. That is to say, a master is required to furnish 'such (appliances) as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or unsafe appliances.' "

See, also, Thompson, Neg. sec. 8. And, regarding the in-

strumentalities and appliances furnished the servant, the same author (Labatt) at section 22a, states as a corollary to the foregoing the following:

"The general principle laid down in section 14, *ante*, involves the corollary that the master is in default as respects his servants, unless the appliances furnished are such as would commend themselves to a reasonably prudent man. He is bound to furnish such appliances as are reasonably safe and suitable, such as a prudent man would furnish if his own life were exposed to the danger that would result from unsuitable or unsafe appliances. In order to discharge this obligation, he must see that instrumentalities which he furnishes are in 'proper condition'; that is to say, in 'a condition which shall not endanger the safety of the employed,' or in such a condition 'that an employee can perform all the duties required of him with reasonable safety,' or in such a condition that it shall be 'reasonably probable that injury will not occur in the exercise of the employment.' Such being the general character of the master's obligations, the doctrine is now regarded as axiomatic that the employer is bound to furnish adequate materials and means and resources suitable to accomplish the work; that is to say, all that is necessary to carry on the business, including premises reasonably safe for that purpose."

In this case the car of coal with its sliding door to be opened was an instrumentality furnished plaintiff with which, and about which, to work. There is some evidence that it was in a defective and dangerous condition, and that such condition could have been easily ascertained if any attention had been given to it when it was set out for unloading. The plaintiff went to it to unload it on a dark night equipped with no light by which he could see and determine conditions, save that of a lantern provided him by the defendant. The question of whether plaintiff was guilty of contributory negligence was submitted to the jury, and determined in his favor. The jury were properly instructed that plaintiff could not recover unless they should find that his injury was the direct and proximate result of defendant's neglect to use ordinary care to keep and maintain said car and the door thereof in a safe condition to be unloaded without injury to those performing the work. While the petition may be subject to some slight criticism in not being sufficiently full and specific in stating de-

fective and unsafe conditions, yet the proof was directed and instructions given on this theory, and we have no doubt but that it was the correct theory of the case. We have read the entire record, and believe there was sufficient evidence to support the verdict of the jury, and that no reversible error has been shown..

The case should be affirmed. · ·

By the Court: It is so ordered.