OSCN Found Document:CARBAJAL v. PRECISION BUILDERS, INC.

 
 
 
 OSCN navigation


 
 Home

 
 Courts

 
 Court Dockets

 
 Legal Research

 
 Calendar

 
 Help
 





 
 
 Previous Case

 
 Top Of Index

 
 This Point in Index

 
 Citationize

 
 Next Case

 
 Print Only
 
 

 
 
 
 CARBAJAL v. PRECISION BUILDERS, INC.
2014 OK 62
Case Number: 111114
Decided: 07/01/2014
As Corrrected: July 3, 2014
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2014 OK 62, __ P.3d __

ANDRES CARBAJAL, Petitioner/Appellant,
v.
PRECISION BUILDERS, INC., and/or MARK DICKERSON, and/or HOOVER CONSTRUCTION CO., and/or DAVITA, INC., and THE WORKERS' COMPENSATION COURT, Respondents,
and
NO INSURANCE, and/or NEW HAMPSHIRE INSURANCE CO., and/or TEXAS MUTUAL INSURANCE CO. (NLC), Insurance Carriers.

CERTIORARI TO THE OKLAHOMA COURT OF CIVIL APPEALS, DIVISION NO. IV

¶0 Workers' compensation claimant sought benefits after he allegedly fell from scaffolding. The Workers' Compensation Court trial tribunal concluded that the claimant was not an employee. A three-judge panel of the Workers' Compensation Court affirmed the order of the trial tribunal. The Court of Civil Appeals sustained the order of the three-judge panel, and the claimant sought certiorari review in this Court. We hold that the factors applied from Page v. Hardy, 1958 OK 283, 334 P.2d 782 show that the construction worker was an employee and not an independent contractor when he was allegedly injured.

CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF
CIVIL APPEALS IS VACATED; ORDER OF THE THREE-JUDGE REVIEW PANEL OF
THE WORKERS' COMPENSATION COURT IS VACATED; AND THE PROCEEDING IS REMANDED TO THE WORKERS' COMPENSATION COURT FOR
FURTHER PROCEEDINGS CONSISTENT WITH THE OPINION OF THIS COURT

Catherine Gatchell Cooper, Tulsa, Oklahoma, for Petitioner
Richard L. Blanchard, Tulsa, Oklahoma, for Respondent, Hoover Construction Co.
Dana L. Gish, Tulsa, Oklahoma, for Texas Mutual Insurance Co.

EDMONDSON, J.

¶1 Claimant, Andres Carbajal, alleged that he was injured[1] when scaffolding he was on was blown over and he fell while working on a construction project in Okmulgee, Oklahoma. He filed a claim in the Workers' Compensation Court and alleged that he was an employee of Precision Builders, Inc., and/or Mark Dickerson (Precision) when he fell with the scaffolding.[2] The trial tribunal denied the claim upon determining that claimant was an independent contractor and not an employee. The three-judge panel affirmed the trial tribunal and the panel's order was sustained by the Court of Civil Appeals. The question presented on certiorari is whether petitioner was an employee or independent contractor.

¶2 Claimant filed a Form 3 in June 2010 and alleged that he fell from scaffolding while working at a construction site on April 26, 2010. The substantive rights and obligations of the parties in a workers' compensation proceeding are based upon the statutes in effect on the date of the worker's injury.[3] The law in effect on April 26, 2010, defined "employee" for the purpose of workers' compensation as "any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act ..."[4] and "employment" as "work or labor in a trade, business, occupation or activity carried on by an employer ..."[5] and an "employer" is a "person, partnership, [etc.] . . . employing a person included within the term 'employee' as defined herein."[6] There is a long history in this state of not including an independent contractor within the statutory definition of an employee.[7] Consistent with this distinction concerning the difference between an employee and an independent contractor, 85 O.S.Supp.2009 § 11 classified an independent contractor as a type of employer who is required to be liable for the workers' compensation due to his or her employees.[8]

¶3 In Page v. Hardy, 1958 OK 283, 334 P.2d 782 , this Court set out several factors to be considered when determining whether an employee/employer relationship exists. Those are:

(a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business for others; (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (i) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability.

Page v. Hardy, 334 P.2d at 784-785.

¶4 The claimant testified at a hearing before the trial tribunal. Claimant is "a documented Hispanic worker" who does not speak English and did not complete the third grade. He started working for Precision in 2006 on a ranch in Texas where he did construction work. He lived there while working on the site. In 2009 he worked January and February, then stopped, and in August he went back to work for Precision.

¶5 Claimant testified on the degree of control exercised by his supervisors. He worked as part of a crew of eight to nine people, and his supervisors at Precision told him where to go, when to be there, when he could leave, and when he could go to lunch. The crew would go to lunch together. He worked from eight to fourteen hours a day. He was not allowed to come and go from a construction site whenever he wanted. His work was framing, building doors, and installing sheetrock. He did not read blueprints or construction plans, and he did what he was told to do. He testified he had no "special schooling or training" to teach him how to do construction work. He answered in the affirmative when questioned whether he was "simply told what to do, and you did it with your hands...."

¶6 He testified he would go from one job site to another as directed by his supervisors who were relating Mark Dickerson's directions, but sometimes there was a week or two, "possibly three weeks the most," but "sometimes" it was longer between construction assignments. He stated that between the assignments from Precision there was a block on a street where he could go with "a lot of people standing in there, and sometimes they go and hire you for one day . . . [s]ometimes it's just like for one day or two," and he was paid seven to eight dollars per hour. There was no testimony on the nature of the work claimant performed when working for a day or two for the various people who hired him on the street.

¶7 He testified Mark Dickerson was "the boss" at Precision and he took orders from Mr. Dickerson through two supervisors who speak Spanish. He stated he was working on a project on a ranch in Texas and two supervisors told him of the project in Oklahoma, because "it was by Mark's orders . . . and Mark gave me the address." When questioned whether Mark "invited" claimant to go to Oklahoma instead of ordering him to go, the claimant said, "No. He told me to go to work." He testified "Marcos" (Mark Dickerson) paid him $400 "gas money" for him and another Precision worker to travel from Texas to Okmulgee, Oklahoma, to work at the construction site. He stated he did not have a driver's license. The other worker was a friend who gave him rides to work. He answered in the affirmative when questioned whether he was "sometimes paid for travel costs."

¶8 Claimant testified he worked on construction sites where he would use a hammer for framing and a cordless drill for metal studs and screws. He testified he has his own tool belt and he owns a cordless drill, measuring tape, knife, pencil, level, pliers, and a sheetrock gun. He stated he has never used "leg extensions" to install sheetrock and he does not own a nail gun or compressor.

¶9 He also testified his supervisor at Precision provides a "big orange box" with tools and "we all take tools from there." He stated he used tools from the tool box supplied by Precision to perform his assigned tasks. He stated some of his co-workers used tools from the tool box and some did not. He did not provide the lumber or the metal framing used in the construction projects. When asked if he paid for nails and screws or "that kind of thing," he responded with "I don't buy anything for work." He testified he did not supply the scaffolding he was on when he fell.

¶10 Claimant testified he was paid $15.00 per hour, sometimes in cash and sometimes by a money order. He testified sometimes he is paid $500, sometimes $200, "sometimes he [Dickerson] has to complete what he owed me for past weeks." He stated he was paid by the hour, and that his two supervisors, Key or Rodriquez, "they write them [the hours] down." Claimant testified Precision never provided him any forms relating to income taxes. Claimant obtained information from the Internal Revenue Service that Precision had submitted forms to the IRS in 2008 and 2009 that designated amounts paid to claimant as "non-employee compensation."

¶11 Counsel for respondent provided a copy of a $3,000 check written in 2009 and made payable to the claimant. The check states "Subcontract" on its memo line. Claimant testified that he does not know what it says, "I just go and cash it." Counsel for respondent asked claimant why he was paid $3,000 with three $1,000 money orders in May 2010. He stated that he was owed money for work he did on "the ranch," and he had to pay others for work they did in Okmulgee. He testified he was given $3,000 because he was supposed to pay his friend and another person. He was directed to pay them because "they didn't have an ID to cash the checks," and he "had proper identification and a social security number ... and paid other people for Marcos [Mark Dickerson]." Claimant stated he did not know "why he [Dickerson] did it like that, because sometimes he gave us cash too." He stated he never held himself out as "Carbajal Construction Company." He was never asked to negotiate contracts with Precision.

¶12 No testimony was offered at the hearing by Respondent.[9] Respondent introduced three exhibits, the information from the IRS for 2008 and 2009, the $3,000 check, and three $ 1,000 money orders dated May 21, 2010, and made payable to "Andreas Carbajal."

¶13 Respondent argued in this Court that on appeal the "any competent evidence" standard of review should apply and an appellate court "will defer to the weighing of evidence by the trial court." Respondent relied on two opinions by the Court of Civil Appeals as authority supporting the argument. Treat v. McDonald's, 1993 OK CIV APP 89, ¶ 7, 854 P.2d 393 and Rivera v. Wal-Mart Stores, Inc., 1999 OK CIV APP 22, ¶ 3, 977 P.2d 366. Respondent's argument and nonprecedential cited authority[10] are not applicable to this controversy.[11]

¶14 Respondent's argument does not make a distinction between jurisdictional facts and nonjurisdictional facts for the purpose of this Court's review of an order of the Workers' Compensation Court. Historically, this Court has used a de novo review when examining a jurisdictional issue such as whether a claimant possessed the status of "employee" at the time of injury.[12] We have explained that "Because the error sought to be corrected is one from resolution of a jurisdictional fact issue, no deferential standard of review may be accorded here to the trial tribunal's finding of employment status."[13] In summary, whether claimant was an employee or an independent contractor is a jurisdictional issue which requires this Court to exercise a de novo review of the record without deference to the findings of fact or legal conclusions made by the trial tribunal or the three-judge panel.[14]

¶15 We have said that "An independent contractor is one who agrees to perform a certain service without the control, supervision, or direction of his employer in all matters connected with the performance of the service except the result or product of the work."[15] We have also explained concerning the employer-employee relationship that "[n]o one factor is controlling, and the relationship must be based on the set of facts peculiar to the case."[16]

¶16 Claimant testified that his hourly wage was $15.00 and that two people who spoke Spanish and gave him directions kept track of his time. He testified that he was instructed what to do at the construction sites. He testified that he brought his own tool belt with tools to work. He also testified that Precision provided tools for him and other co-workers to use. His contract was oral and he was told what construction sites to travel to and work at. His uncontested testimony is that Precision paid him money for traveling to different construction sites, including the one in Oklahoma where he was allegedly injured.

¶17 Precision points to claimant bringing his tool belt with tools to work. However, it is uncontested that a person acting as his supervisor in giving him directions for Precision also supplied tools for both claimant and his coworkers to use, and that these supplied tools were maintained by the supervisor on his truck at the construction sites. Claimant used some of these supplied tools. The fact that claimant used his own tools in addition to those supplied by a person acting as Precision's supervisor points to an employer allowing a convenience to an employee instead of an independent contractor required to maintain and use his or her own tools to complete a project. Claimant did not provide the lumber, metal, nails, or screws.

¶18 Respondent points to a check which states "Subcontract" on the memo line, Precision's IRS forms, and the fact that the check was for $3,000 and the total for the three money orders was $3,000. Between the years 2006 and 2010 when claimant was working for Precision, Respondent points to one check in 2009 and three money orders issued after the alleged date of injury. Claimant testified that Precision directed him to use this money to pay other workers who lacked identification and social security numbers. This testimony is not contested. Respondent states that the IRS forms for 2008 and 2009 show a contradiction in the testimony by claimant, because they show claimant received compensation as a non-employee. The fact that Precision did not withhold taxes and claimant paid others is part of our analysis,[17] but these two facts are not determinative when considered with other facts. These forms were prepared and submitted to the IRS by Precision. Claimant testified that he did not know anything about taxes.

¶19 The testimony and exhibits show that Precision treated claimant as an employee for every purpose except for the IRS forms and the one check where "Subcontract" was written on the memo line of the check. But, testimony showed that claimant cannot understand English and was told to use the funds given to him for paying other coworkers. Precision knew of this language barrier when the phrase "Subcontract" was handwritten on the check in English.

¶20 The degree of control exercised by Precision over claimant at the construction site, the lack of claimant's abilities to read plans and blueprints, Precision providing tools for claimant and others to complete the assigned tasks, and travel money provided to claimant to reach the construction sites show that Precision treated claimant as employee. Claimant's work was not based upon him possessing a professional or trade license, or that he was an artisan with a specialized skill, or that he possessed specialized educational skills requiring him to use personal judgment and skill independent of Precision's control or supervision when he completed construction tasks.

¶21 Counsel for Precision not appearing in this proceeding, but appearing before the three-judge panel, made the argument "there was no specific testimony . . . [t]here was nothing about direction and controls and orders" concerning the Oklahoma job. We disagree. Claimant testified how Precision controlled him at construction sites. He was at a Precision Construction site in Oklahoma. There was no cross-examination of claimant eliciting testimony stating claimant's direction and control was less in Oklahoma than at job sites in Texas. There was no testimony before the trial tribunal that Precision's control over the claimant was anything less than that stated by claimant. There was testimony that claimant was injured 45 minutes into his first day on the Oklahoma job. This fact does not negate claimant's testimony on the control and direction exercised by Precision over claimant.

¶22 Counsel for Precision not appearing in this proceeding, but appearing before the three-judge panel, made the argument that claimant worked for others besides Precision and this fact showed that he was an independent contractor. In Page v. Hardy, supra, we referred to "whether or not the one employed is engaged in a distinct occupation or business for others." Id. 334 P.2d at 785. There was no testimony that claimant's work for others as a laborer was a distinct occupation or business, or that his work for others was anything other than providing labor. Page was published in 1958, and while we do not diminish its authority, we may not disregard the more modern economic reality that a person may have more than one employer during a period of time, or may be in a employer-employee relationship and an independent contractor relationship with someone other than the employer, or that an employer may hire a person as an employee for a specific job or a specific time period.[18]

¶23 Claimant indicated that when he was hired off the street he took his tool belt with him and he was paid seven to eight dollars an hour for manual labor. Claimant's work was not based upon him possessing a professional or trade license, or that he was an artisan with a specialized skill, or that he possessed specialized educational skills. We decline to adopt Respondent's view that a person hired off the street for manual labor should be considered as an independent contractor with a distinct occupation or business for others if that person carries a tool belt and is hired for either one day or two days of manual labor at a construction site, and then also works for Precision and brings his tool belt to Precision's construction site.

¶24 Claimant testified that he was paid $15.00 per hour. Argument by Respondent's counsel is that the one check issued between 2006 and 2010 and money orders issued after the alleged injury show that claimant was paid by the job. Respondent's interpretation of the check and money orders was disputed by claimant. Claimant had an explanation for the amounts of the check and money orders that was consistent with employment status. Even if we assume that Respondent and Precision are correct and claimant was paid by the job, then this would be one factor we consider as part of our analysis and it would not be determinative as implied by Precision before the Workers' Compensation Court.[19] Precision's argument interpreting the method of payment is not evidence.[20]

¶25 Precision submitted no contract or memo or other writing that served as a direct communication of independent contractor status between Precision and claimant prior to any of the jobs he performed for Precision. Although claimant worked on jobs for Precision from 2006-2010, nothing in the record points to the existence of any contract or memo or other writing that served as a direct communication between Precision and claimant that occurred after any of the jobs he performed for Precision and which also show independent contractor status, except the one 2009 check with the handwritten notation of "Subcontract" in English.[21]

¶26 Generally, if the exercise of judicial power is used to adjudicate an issue of fact in the affirmative, then facts must be in the evidence that affirmatively support the decision.[22] We have said that a workers' compensation claimant has an initial burden of proving that an injury occurred in the course of employment and arose out of claimant's employment; and we noted that the burden of proof, by a preponderance of the evidence, shall be on the party requesting benefits or relief pursuant to the provisions of the Workers' Compensation Act unless otherwise specifically provided for by law.[23] Considering each of the factors on which the evidence was presented leads us to the conclusion that claimant met his burden to show that he was an employee of Precision.

¶27 The opinion of the Court of Civil Appeals is vacated. The order of the three-judge panel of the Worker's Compensation Court is vacated, and the matter is remanded for further proceedings consistent with this opinion.

¶28 ALL JUSTICES CONCUR.

FOOTNOTES

[1] Claimant's allegation of injury has not been adjudicated because his claim was dismissed on the jurisdictional ground that he was not an employee.

[2] Precision was hired by Hoover Construction Co. (Hoover), which was retained by DaVita, Inc., to build a dialysis center in Okmulgee, Oklahoma.

[3] Carlock v. Workers' Compensation Commission, 2014 OK 29, ¶ 2, 324 P.3d 408. See also Holley v. Ace American Ins. Co., 2013 OK 88, ¶ 8, 313 P.3d 917, 920, quoting Knott v. Halliburton Services, 1988 OK 29, ¶ 4, 752 P.2d 812, 813 ("The right of an employee to compensation arises from the contractual relationship existing between the employee and the employer on the date of injury, and the statutes then in force form part of that contract and determine the substantive rights and obligations of the parties."); Scruggs v. Edwards, 2007 OK 6, ¶ 7, 154 P.3d 1257, 1261 (same).

[4] 85 O.S.Supp.2009 § 3 (9) provides in part: "'Employee' means any person engaged in the employment of any person, firm, limited liability company or corporation covered by the terms of the Workers' Compensation Act, and shall include workers associating themselves under an agreement for the performance of a particular piece of work, in which event such persons so associating themselves together shall be deemed employees of the person having the work executed; ...."

[5] 85 O.Supp.2009 § 3 (11): "'Employment' includes work or labor in a trade, business, occupation or activity carried on by an employer or any authorized voluntary or uncompensated worker rendering services as a firefighter, peace officer or emergency management worker;"

[6] 85 O.S.Supp. 2009 § 3 (8): " 'Employer', except when otherwise expressly stated, means a person, partnership, association, limited liability company, corporation, and the legal representatives of a deceased employer, or the receiver or trustee of a person, partnership, association, corporation, or limited liability company, departments, instrumentalities and institutions of this state and divisions thereof, counties and divisions thereof, public trusts, boards of education and incorporated cities or towns and divisions thereof, employing a person included within the term 'employee' as herein defined,"

[7] See, e.g., Mastin v. Black, 1936 OK 148, 54 P.2d 399, 400 (Because claimant was an independent contractor and not an employee the award was vacated.); Producers' Lumber Co. v. Butler, 1922 OK 307, 209 P. 738, 740 (Court explained that a claimant was an employee of an independent contractor and not an employee of third party). Cf. Okla. Sess. Laws 1919, Ch. 14, p. 25 (S.B. No. 36), Persons Included, editorial annotation explaining the persons covered by the Workers' Compensation Law, and stating that "the Oklahoma Commission holds that an independent contractor is not included."

[8] 85 O.S.Supp.2009 § 11 (A) & (B)(1) state in part that: "Every employer subject to the provisions of the Workers' Compensation Act shall pay . . . compensation . . . [and] The independent contractor shall, at all times, be liable for compensation due to his or her direct employees ...."

[9] Our references to Respondent herein are to both Precision and Respondent unless indicated otherwise, although no appearances by counsel for "Precision" have been made in this proceeding. Counsel for respondent, Hoover Construction, has appeared herein and argued that Precision should not be considered as an employer. It was alleged in the trial tribunal that Precision was a subcontractor of Hoover. It was also alleged in the trial tribunal that Precision did not possess workers' compensation coverage in Oklahoma at the time of claimant's alleged injury.

[10] An opinion released for publication by order of the Court of Civil Appeals has persuasive effect, but is not precedential. 12 O.S.Supp.2012 Ch. 15, App. Okla. Sup. Ct. R. 1.200(c)(2). See also Tubbs v. State ex rel. Teachers' Retirement System of Oklahoma, 2002 OK 79, n.7, 57 P.3d 571, 575; In the Matter of Baby Girl L., 2002 OK 9, n. 6, 51 P.3d 544, 553.

[11] Treat and Rivera rely upon our opinion in Bittman v. Boardman Co., 1977 OK 32, 560 P.2d 967, for the long-recognized concept that the Worker's Compensation Court may refuse to give credence to any portion of the evidence. However, Respondent's argument does not utilize the analysis this Court used in Tolbert v. Eastern Contracting, Inc., 1999 OK 23, 978 P.2d 358, to explain the difference between Bittman and Hughes v. Cole Grain Co., 1998 OK 76, 964 P.2d 206, where we reversed an order denying a claim because claimant's proof was not rebutted by any competent evidence. Tolbert, at ¶¶ 16-18, 978 P.2d at 361. Because the scope of our review is dependent upon the jurisdictional nature of the adjudication, we need not address Respondent's argument based upon the principle in Bittman.

[12] Triad Transport, Inc. v. Wynne, 2012 OK 30, ¶ 7, 276 P.3d 1013, 1016 ( "This Court has held continuously that a decision of the Workers' Compensation Court concerning a jurisdictional question is reviewed de novo."); Yzer, Inc. v. Rodr, 2012 OK 50, ¶ 3, 280 P.3d 323, 325 ("In workers' compensation cases we are not bound by the lower court's determination of jurisdictional facts. Whether a claimant is acting as an employee at the time of injury is a jurisdictional fact and the Supreme Court will review the record to make an independent finding on that issue.").

[13] Brown v. Burkett,1988 OK 49, n.6, 755 P.2d 650, 651.

[14] Duncan v. Powers Imports, 1994 OK 126, 884 P.2d 854, 855. See also Garrison v. Bechtel Corp., 1995 OK 2, 889 P.2d 273, 278 (the adjudication whether an employer-employee relationship exists is an adjudication of a jurisdictional fact requiring the exercise of de novo review in this Court where we examine the entire record, weigh the evidence, and make independent fact findings without deference to the fact findings or to the legal rulings made by the compensation court.).

[15] Bouziden v. Alfalfa Elec. Co-op., Inc., 2000 OK 50, ¶ 12, 16 P.3d 450, 455.

[16] Swafford v. Sherwin Williams, 1993 OK 141, 863 P.2d 1215, 1217.

[17] Mills v. R.T. "Bob" Nelson's Painting Service, 1966 OK 262, 421 P.2d 849 (Respondent did not control or supervise claimant, respondent was furnished estimates of job progress by claimant, respondent paid money to claimant that he paid his workers, and no deductions were made from the money paid by respondent to claimant.).

[18] See, e.g., Cattlemen's Steakhouse, Inc. v. Waldenville, 2013 OK 95, 318 P.3d 1105 (person working as a security guard who was also a Deputy Sheriff).

[19] While we consider the method of payment when determining employment status, we have also long recognized that payment by the job is not a determinative factor of a person's employment status. See, e.g., Drumright Gas Engine Co. v. Sherrill, 1935 OK 454, 46 P.2d 921, 924, quoting Chicago, R. I. & R. R. Co. v. Bennett, 1912 OK 592, 128 P. 705, 706, 20 A. L. R. 678 ("But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employee. That the mere fact that the work being performed by an employee at the time he was injured was done by the piece or job, as by payment of a stated price for each car when loaded, does not deprive him of the character of an employee, where he was a mere servant carrying out the employer's will and instructions.").

[20] Generally, argument of counsel is not a form of evidence. In re Guardianship of Stanfield, 2012 OK 8, n. 55, 276 P.3d 989, 1002 (unsworn statements by counsel do not constitute evidence); Willis v. Sequoyah House, Inc., 2008 OK 87, ¶¶ 12-13, 194 P.3d 1285, 1289-1290 (same).

[21] For example, independent contractors and their customers often, but not always, communicate with each other, and this communication may show the nature of the relationship. See, e.g., Swyden Const. Co. v. White, 1963 OK 162, 383 P.2d 674 (an independent contractor may bill his or her client); Mills v. R.T. "Bob" Nelson's Painting Service, 1966 OK 262, 421 P.2d 849 (an independent contractor may furnish to a customer estimates of progress in the work due to the lack of direct supervision and control of the work).

[22] Christian v. Gray, 2003 OK, 10, ¶ 44, 65 P.3d 591, 609. Of course, an adjudication of an issue of fact in the negative may be based upon an entire absence of proof, or a failure to prove one or more required elements necessary to establish a fact. See, e.g., State v. Price, 2012 OK 51, ¶ 33, 280 P.3d 943, 953 (a demurrer to the plaintiff's evidence should be sustained only when there is an entire absence of proof); Silk v. Phillips Petroleum Co., 1988 OK 93, 760 P.2d 174, 180 (absence of one element of fraud will defeat fraud claim).

[23] Davis v. Southwestern Bell Telephone, 2006 OK 48, ¶ 15, & n.7, 139 P.3d 892, 896, citing 85 O.S. Supp.2005 § 1.1(B). See also Swyden Const. Co. v. White, 1963 OK 162, 383 P.2d 674, 675 (The existence of an employee-employer relationship constitutes a primary prerequisite to an award, and claimant has the burden to establish the status of an employee in relation to the person against whom a claim is asserted.).

 






 Citationizer© Summary of Documents Citing This Document
Cite
 Name
 Level
 None Found.
Citationizer: Table of Authority
Cite
 Name
 Level
 Oklahoma Court of Civil Appeals Cases Cite
Name
Level 1993 OK CIV APP 89, 854 P.2d 393, 64 OBJ 1944, Treat v. McDonald's
Discussed 1999 OK CIV APP 22, 977 P.2d 366, 70 OBJ 1244, Rivera v. Wal-Mart Stores, Inc.
Discussed
Oklahoma Supreme Court Cases Cite
Name
Level 1988 OK 29, 752 P.2d 812, 59 OBJ 861, Knott v. Halliburton Services
Discussed 1988 OK 49, 755 P.2d 650, Brown v. Burkett
Discussed 1988 OK 93, 760 P.2d 174, 59 OBJ 1688, Silk v. Phillips Petroleum Co.
Discussed 1993 OK 141, 863 P.2d 1215, 64 OBJ 3366, Swafford v. Sherwin Williams
Discussed 1994 OK 126, 884 P.2d 854, 65 OBJ 3839, Duncan v. Powers Imports
Discussed 1936 OK 148, 54 P.2d 399, 176 Okla. 46, MASTIN v. BLACK
Discussed 1935 OK 454, 46 P.2d 921, 173 Okla. 147, DRUMRIGHT GAS ENGINE CO. v. SHERRILL
Discussed 1958 OK 283, 334 P.2d 782, PAGE v. HARDY
Discussed at Length 1922 OK 307, 209 P. 738, 87 Okla. 172, PRODUCERS' LUMBER CO. v. BUTLER
Discussed 1963 OK 162, 383 P.2d 674, SWYDEN CONSTRUCTION COMPANY v. WHITE
Discussed at Length 2002 OK 9, 51 P.3d 544, 73 OBJ 546, IN THE MATTER OF BABY GIRL L.
Discussed 1966 OK 262, 421 P.2d 849, MILLS v. R.T. BOB NELSON'S PAINTING SERVICE
Discussed at Length 1995 OK 2, 889 P.2d 273, 66 OBJ 355, Garrison v. Bechtel Corp.
Discussed 2002 OK 79, 57 P.3d 571, TUBBS v. STATE OF OKLAHOMA, EX REL. TEACHERS' RETIREMENT SYSTEM
Discussed 2003 OK 10, 65 P.3d 591, CHRISTIAN v. GRAY
Cited 2006 OK 48, 139 P.3d 892, DAVIS v. SOUTHWESTERN BELL TELEPHONE
Discussed 2007 OK 6, 154 P.3d 1257, SCRUGGS v. EDWARDS
Discussed 2008 OK 87, 194 P.3d 1285, WILLIS v. SEQUOYAH HOUSE, INC.
Discussed 2012 OK 8, 276 P.3d 989, IN THE MATTER OF THE GUARDIANSHIP OF STANFIELD
Discussed 2012 OK 30, 276 P.3d 1013, TRIAD TRANSPORT INC. v. WYNNE
Discussed 2012 OK 50, 280 P.3d 323, YZER, INC. v. RODR
Discussed 2012 OK 51, 280 P.3d 943, STATE v. PRICE
Discussed 2013 OK 88, 313 P.3d 917, HOLLEY v. ACE AMERICAN INSURANCE COMPANY
Discussed 2013 OK 95, 318 P.3d 1105, CATTLEMEN'S STEAKHOUSE, INC. v. WALDENVILLE
Cited 2014 OK 29, 324 P.3d 408, CARLOCK v. WORKERS' COMPENSATION COMMISSION
Cited 1977 OK 32, 560 P.2d 967, BITTMAN v. BOARDMAN CO.
Discussed 1998 OK 76, 964 P.2d 206, 69 OBJ 2623, Hughes v. Cole Grain Company
Discussed 1999 OK 23, 978 P.2d 358, 70 OBJ 1007, Tolbert v. Eastern Contracting, Inc.
Discussed 2000 OK 50, 16 P.3d 450, 71 OBJ 1753, BOUZIDEN v. ALFALFA ELECTRIC COOPERATIVE, INC.
Discussed 1912 OK 592, 128 P. 705, 36 Okla. 358, CHICAGO R. I. & P. RY. CO. v. BENNETT
Discussed
Title 85. Workers' Compensation Cite
Name
Level 85 O.S. 1.1, Repealed by Laws 2011, SB 878, c. 318, § 87
Cited 85 O.S. 3, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed 85 O.S. 11, Repealed by Laws 2011, SB 878, c. 318, § 87
Discussed