## DRUMRIGHT GAS ENGINE CO. et al. v. SHERRILL et al.

No. 24597. April 23, 1935.

Rehearing Denied July 9, 1935.

Hayes, Richardson, Shartel, Gilliland & Jordan, for petitioners.

Page & Atkinson, for respondents.

McNEILL, C. J. This is a review of an award of the State Industrial Commission. The real question centers on whether the evidence supports the finding of the Commission that the relation of master and servant existed at the time of the injury to the workman.

The Commission, on March 22, 1933, found that the respondent, J. I. Sherrill, sustained an accidental personal injury on April 3, 1932, compensable under the Workmen's Compensation Law while in the employ of the Drumright Gas Engine Company.

Respondent met with an unfortunate accident, which, in the opinion of medical experts, has resulted in permanent total disability. While dismantling an oil and gas tank, he fell from 10 to 18 feet from a scaffold, and lighted heavily on his head, breaking or fracturing his neck, injuring his back, shoulders, and head. He was a resident of the city of Drumright for approximately 17 years, and, during this time, had often worked as a laborer for said company.

The Commission found that respondent had been paid compensation for temporary total disability from April 3, 1932, to August 17, 1932, in the total sum of $277.20; that on August 22, 1932, petitioners filed a motion to suspend compensation as of August 17, 1932; that respondent was entitled to resumption of payment of compensation and further medical treatment as of August 17, 1932, at the rate of $15 per week until further ordered by the Commission.

The petitioners contend that there was no competent evidence to sustain the finding that respondent was an employee of the Drumright Gas Engine Company and that there was no competent evidence to support the finding that the average daily wage of the respondent was $4.50.

The evidence is not entirely clear as to what was the average weekly wage of the respondent at the time of the injury in question; but the insurance carrier paid respondent compensation for temporary total disability at the rate of $14.85 per week, and the evidence shows that, prior to the work respondent was performing at the time of the injury, he had received on various jobs from 25 cents to 92½ cents per hour. The evidence reasonably supports the finding that the average daily wage of the respondent at the time of the accident was $4.50.

The Drumright Gas Engine Company was a partnership, composed of four partners located at Drumright, Okla., and was engaged in the business of repairing tanks. Charles R. Funk was one of the partners and the manager of the company.

On March 12, 1932, the Drumright Gas Engine Company entered into a contract with I. J. Cohen & Company to dismantle a tank located in the Drumright oil field. The contract provided:

"This is an agreement entered into by and between the Drumright Gas Engine Company, of Drumright, Oklahoma, party of the first part and I. J. Cohen & Company of Kansas City, Kansas, party of the second part, wherein the party of the first part agrees to cut and dismantle a tank which is located in Drumright, Oklahoma, and owned by Jake Glenn. (Said work to be completed by April 15, 1932.)

"It is understood that the party of the first part is to bust the rivets on this tank with chisel and hammers, leaving the sheets in original lengths, for the consideration of $3.50 per net ton based on railroad weights.

"And furthermore, the party of the first part is to assume all liabilities that may occur to their employees and properties while in the process of completing the work.

"Upon receipt of this agreement duly signed and executed, the party of the second part will have their bank, the Produce Exchange Bank, of Kansas City, Missouri, guarantee the Drumright State Bank, of Drumright, Oklahoma, payment for this dismantling and cutting. The total amount to be arrived at the rate of $3.50 per net ton, based on railroad weights.

"This agreement, which is written in duplicate, when properly signed and executed will constitute a binding contract between the above parties.

"Accepted

"Drumright Gas Engine Company

"By _____

"I. J. Cohen & Company

"By _____"

Immediately after entering into the above contract with Cohen & Company, the Drumright Gas Engine Company, through its manager, Charles R. Funk, made its arrangements with respondent, Frank Sanders, and Asa Faubus, day laborers, to perform the work of dismantling this tank. The undisputed evidence is that the Drumright Gas

Engine Company was to pay all the expenses of performing the work and that it was to pay each one of the laborers, not one-fourth of the profits from the job but one-fourth of the total sum received from Cohen & Company for dismantling the tank. During the progress of the work, Sherrill was injured, and petitioner's manager, Charles R. Funk, sent him to a physician for treatment. Funk thereafter employed another man, E. V. Anderson, to continue the work of dismantling the tank in place of the respondent. Upon the completion of the work, Cohen & Company paid Drumright Gas Engine Company in accordance with their contract the sum of $448.12.

At the hearing before the Commission there was introduced in evidence the expense sheet of the Drumright Gas Engine Company. This exhibit had been prepared by said company and showed, in part, as follows:

"Drumright Gas Engine Company.
"Machine Repair, Welding and Boiler Shop.
'Tank Job:

"Workers: Frank Sanders, Asa Faubus, Jim Sherrill, E. V. Anderson

| Our Order | Your Order | Date of Ticket | | | |
|---|---|---|---|---|---|
| | | Lumber | $5.40 | | |
| | | Nails | .15 | | |
| | | 2½x3 bar iron | 7.44 | | |
| | | Compensation | 103.53 | | |
| | | (Paid out) | | 116.52 | |
| Received from I. J. Cohen Co. | | $448.12 | | | |
| Paid: | Frank Sanders | 112.03 | | | |
| | Asa Faubus | 112.03 | | | |
| | E. V. Anderson | 56.87 | | | |
| | Jim Sherill | 56.87 | | | |
| | | 336.09 | | | |
| Drumright Gas Co. (Rec'd.) | | $112.03 | | | |
| Difference, our loss | | 4.49 | | | |

It is to be observed that Sherrill was classified as a "Worker" by the Drumright Gas Engine Company. The sheet shows that Frank Sanders was paid $112.03 and Asa Faubus the same amount and that E. F. Anderson, who was hired to take the place of respondent, was paid the sum of $56.87, while respondent was paid the sum of $55.16. This exhibit shows that the expenses of the job of dismantling the tank included compensation insurance in the sum of $103.53. This item covered the employees, including respondent. The total items of expense amounted to $116.52, which was paid by the Drumright Gas Engine Company. The exhibit also shows that the Drumright Gas Engine Company received from I. J. Cohen the sum of $448.12 and, after crediting itself with the sum of $112.03, being

one-fourth of the contract price and being the same amount it paid to the laborers, Frank Sanders and Asa Faubus, there was a loss of $4.49, which it sustained on said job after charging itself with the aforesaid payment of $116.52.

The Drumright Gas Engine Company, on June 9, 1932, filed with the State Industrial Commission its first notice of injury, in which it expressly stated that J. I. Sherrill was its employee and was injured while in its employment. This was a circumstance entitled to be considered by the Commission. The record shows that the insurance carrier was notified that the case was set for hearing on July 21, 1932. After receiving such notice, the Drumright Gas Engine Company and its insurance carrier, Consolidated Underwriters, filed a written notice with the State Industrial Commission that the respondent's disability had ceased on August 17, 1932, and that he had fully recovered and later returned to work.

The evidence shows that petitioners paid the respondent compensation from the time of the accident on April 23, 1932, to August 17, 1932. The evidence also shows that the manager of the Drumright Gas Engine Company went to the tank and observed the progress of the work a number of times. The laborers performing the work were experienced in that line of work and the job was such that no particular instructions or directions were needed. But unquestionably, at all times, the Drumright Gas Engine Company exercised the right of control over the workmen and the whole job of work which was being performed by them. The fact that the Drumright Gas Engine Company, immediately upon the respondent being injured, employed another man to take his place, indicates that it was in complete control and in charge of the work. If it could hire a man to take the place of one of its workers, it likewise had the corresponding right to discharge such an employee. In accordance with said contract, the Drumright Gas Engine Company paid all expenses of the work, including the policy of insurance to cover compensation of the workmen, and no part of these expenses was charged to any of the workmen. Mr. Funk specifically testified that he told the insurance agent that his company would send a check for the compensation insurance as soon as the company determined the wage scale. That scale would not be determined until the dismantled tank could be delivered to the railroad

company for shipment and based on the railroad weights.

The Drumright Gas Engine Company was at the time in question carrying insurance on its general employees, but it was found that a higher part of premium for compensation insurance covering the work of dismantling the tank was required and that it was necessary to take out a special policy for such protection. A special policy was accordingly taken out by the company.

The petitioners did not introduce this policy of insurance in evidence.

These undisputed facts, and all reasonable inferences to be drawn therefrom, lead us to conclude: That the Drumright Gas Engine Company had the contract to dismantle the tank; that it retained the right to and did employ the workmen, including respondent; that it had the right to, and did control and direct the work and the workmen; that it furnished all the materials and paid all expenses of the job, including compensation insurance covering the workmen based on their scale of wages, to wit, $3.50, on the net tons dismantled, measured by railroad weights; that it paid each workman his wages; that the respondent exercised no right or choice in such matters; that there was no division of profits between the Drumright Gas Engine Company and the workmen, but that the workmen were paid a certain percentage of the total contract price of the work irrespective of the profits, as their scale wage, as testified to by Mr. Funk, the manager of said company; that Funk employed respondent as a day laborer in conjunction with two other day laborers to cut down and dismantle this oil tank, which was the business the company was engaged in doing; that said company was to receive for said work a consideration, which was to be arrived at the rate of $3.50 per net ton based on railroad weights from I. J. Cohen & Company of Kansas City, Mo.; and that said Drumright Gas Engine Company under its contract with Cohen & Company was "to assume all liability that may occur to their employees and properties while in the process of completing the work."

In 39 C. J. 35, it is said:

"The relation of master and servant exists whenever the employer retains the right to direct the manner in which the business shall be done, as well as the result to be accomplished, or, in other words, not only what shall be done, but how it shall be done. Inasmuch as the right to control involves the power to discharge, the ex-

istence of the power to discharge is essential, and is an indicium of the relationship."

In the case of Chicago, R. I. & P. R. Co. v. Bennett, 36 Okla. 358, 128 P. 705, 20 A. L. R. 678, this court announced the general accepted rule quoted from 1 Thompson on Negligence, section 629, as follows:

"'In determining whether the relation is that of master and servant, or that of proprietor and independent contractor, the courts have sometimes taken into consideration the manner of payment—whether payment was to be made by the day, week, month, etc., with the reservation of the power to discharge or whether there was to be a payment by the piece or by the entire job. But the mode of payment is not a decisive test by which to determine this question. The test lies in the question whether the contract reserves to the proprietor the power of control over the employee. That the mere fact that the work being performed by an employee at the time he was injured was done by the piece or job—as by payment of a stated price for each car when loaded—does not deprive him of the character of an employee, where he was a mere servant carrying out the employer's will and instructions'."

In the case of Roe v. Winston, 86 Minn. 77, 90 N. W. 122, it was said:

"The * * * test * * * is, Does the person holding the position of master have * * * control over the servant in respect to the performance of his duties? * * * The right to employ and discharge the servant is an element tending to show a right of control."

In Snyder's Workmen's Compensation Law, vol. 1. (2d Ed.) page 161, the rule is announced as follows:

"* * * It has been held that the test by which to determine whether a person is an employer of another is to ascertain whether, at the time the injury was suffered, the other was subject to such person's orders and control and was liable to be discharged for disobedience of orders or misconduct."

In the case of Utility Coal Co. v. Oscar Rogez, 170 Okla. 264, 39 P. (2d) 60, this court announced the rule in the second paragraph of the syllabus as follows:

"One of the tests to determine whether a person is an employee of another is to ascertain whether at the time the injury was suffered the other was subject to such person's order and control and was liable to be discharged for disobedience of orders or misconduct."

We conclude that the relation of master and servant existed between the Drumright

Gas Engine Company and the respondent, Sherrill.

There is no dispute about the work being hazardous within the meeaning of the Workmen's Compensation Law. The medical expert testimony warrants a finding of pemanent total disability.

Award affirmed.

BAYLESS, PHELPS, CORN, and GIBSON, JJ., concur.