## PINE VALLEY LUMBER CO. et al. v. WATSON et al.

No. 27695.    Feb. 14, 1939.

Rehearing Denied March 28, 1939.

McPherren & Maurer, for petitioners.

Claud Briggs, John Morrison, and Mac Q. Williamson, Atty. Gen., for respondents.

OSBORN, J. This is an original action in this court instituted by the Pine Valley Lumber Company, hereinafter referred to as petitioner, against W. H. Watson and the State Industrial Commission, hereinafter referred to as respondents, wherein it is sought to review an award of the State Industrial Commission in favor of respondent Watson.

On September 12, 1930, while employed by petitioner, the respondent sustained an accidental personal injury when a railroad car ran over his left foot. He was furnished hospitalization and all of the foot except the heel was amputated. On March 2, 1931, the commission approved a lump sum settlement between the parties whereby respondent was awarded compensation for 150 weeks for the loss of his left foot and an additional 24 weeks which was the estimated recovery period, and said award was paid. Respondent thereafter left Oklahoma and moved to Arkansas and purchased a farm, on which he resided. It appears that the wound upon respondent's foot did not heal; that he developed chronic osteomylitis. Thereafter he was examined by physicians in Ft. Smith, Ark., and on July 15, 1931, a second operation was performed. Respondent's left leg was amputated seven or eight inches below the knee.

On June 14, 1934, respondent filed a motion to reopen the case and award further compensation. Several hearings were had on the motion and on December 8, 1936, the commission entered its findings and made its award. After making its findings regarding the date and nature of respondent's injury, and the lump sum settlement theretofore entered into between the parties,

it was found that the unhealed wound of respondent's foot became infected and as a result thereof an emergency condition arose and that the operation of July 15, 1931, was an emergency operation and the infection and subsequent developments resulted in permanent partial disability to respondent "independent of and in addition to the loss and/or loss of use of the foot and leg." It was found that respondent was temporarily and totally disabled from June 29, 1931, to September 26, 1931, and was entitled to compensation for said temporary total disability; that respondent now has a 10 per cent. loss of use of the left leg and in addition to and independent of said loss of use of said specific member, a permanent partial disability; that his wage-earning capacity had decreased from $2.70 per day to $.70 per day, or a difference in wage-earning capacity of $2 per day.

The award of the commission was for compensation at the rate of $10.39 per week for seven weeks' temporary total disability; $8 per week for a period not to exceed 300 weeks from the 13th day of January, 1932, for permanent partial disability; and the sum of $185.94 representing 10 per cent. permanent partial loss of the use of the left leg. It was further ordered that petitioner pay all reasonable necessary medical, surgical, and hospital bills and expenses incurred in the treatment and care of respondent up to September 16, 1931. Said award is now presented to this court for review.

It is urged that the commission erred in making an order fixing liability for medical and surgical expenses upon the petitioner for the reason that the respondent failed to request such treatment. The authorities cited and relied upon are based upon section 7288, C. O. S. 1921, which specifically provided that "the employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so." That section of the statutes was amended by section 5, chapter 61, Session Laws 1923 (section 13354, O. S. 1931, 85 Okla. Stat. Ann. sec. 14), and the above-quoted statement is not found in the more recently enacted statute. Instead is the following provision:

"* * * Whoever renders medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches and apparatus, or emergency treatment, shall

submit the reasonableness of the charges to the State Industrial Commission for its approval and such charges shall be limited to such charges as prevail in the same community for similar treatment of like injured person, and when so approved shall be enforceable by the commission in the same manner as provided in this act for the enforcement of compensation payments. * * *"

Under the more recently enacted statute it has been held that where it appears from competent evidence that expenses for medical attention are properly allowed, the award will not be vacated because there is not shown a specific demand for such medical attention and the refusal to give the same. Morris v. Bass, 183 Okla. 67, 80 P.2d 281; Oklahoma Utilities Co. v. Johnson, 179 Okla. 456, 66 P.2d 10; U. S. Casualty Co. v. Steiger, 179 Okla. 407, 66 P.2d 55. It is noted that the order in the instant case only served to fix liability for the "reasonable medical, surgical and hospital bills and expenses" upon the petitioner. The reasonableness of the charges for said services have not yet been fixed by the commission. We are not justified in disturbing the present order regarding medical and surgical expense.

Complaint is made of the findings and award for permanent partial disability on the ground that there is involved only a loss or loss of use of a specific member, and since respondent has been compensated for such loss, petitioner's liability has been ended. Respondent contends that in addition to the loss of, and loss of use of, a specific member of the body, he has a general disability, not capable of being classified under the specific disabilities schedule, and is entitled to an award for said general disability under the "other cases" clause of section 13356, O. S. 1931.

Dr. R. S. Love testified in behalf of respondent to the effect that respondent had a 75 per cent. loss of the use of the left leg and 50 per cent. permanent partial disability on account of traumatic neurosis; that the 50 per cent. disability was independent of the leg and was a general nervous condition caused by the pain and suffering which he had sustained by reason of the two operations and the osteomylitis; that said nervous condition was permanent, but might be decreased.

Dr. C. C. Shaw testified in behalf of respondent that respondent had sustained a 75 per cent. loss of the use of the left leg and a 50 per cent. permanent partial disability to the entire body; that the general disability was what is commonly called traumatic neurosis and was independent of the disability to the leg by reason of the amputation.

Dr. I. G. Jones testified in behalf of petitioner to the effect that he did not believe there was such a condition as traumatic neurosis, but on cross-examination stated that there was considerable difference of opinion in the medical profession in regard to the matter; that one group holds to the position that traumatic neurosis is definitely disabling, and the other group that there is no such thing as traumatic neurosis, and that the witness adhered to the theory of the latter group.

Both parties rely upon the case of Eubanks v. Barnsdall Oil Co., 169 Okla. 31, 35 P.2d 873, which case announced the rule for determining the rights of an injured workman where there is a loss of a specific member of the body and in addition thereto a decreased earning capacity created by disabilities not capable of being classified under the specific disabilities schedule. Therein it was said:

"Where the disabilities flowing from an injury are of such nature that a part of them can be classified under the specific schedule and a part cannot be so classified, due consideration must be given to the provisions of the statutes governing both classes of disabilities. This can only be done by the adoption of a rule which takes cognizance of all applicable provisions of the statute in such cases.

"After careful consideration we have decided that the correct rule is that, where an injury to a workman results in permanent partial disability, a part of which disability is manifested by the loss of or partial or total loss of use of a specific member, which last-mentioned portion of the disability is capable of classification under the specific disability schedule of section 13356, supra, the other portions of the disability being incapable of such classification, the injured workman is entitled to compensation for the loss of or partial or total loss of use of the specific member without regard to the effect thereof upon his earning capacity, and in addition to such compensation he is entitled to compensation for the unclassified disability under the "other cases" clause of section 13356, supra, in accordance with the effect thereof upon his earning capacity. Since compensation awarded under the specific disability schedule is in lieu of other compensation, the recovery for a loss of earning capacity is limited in such a case to the decrease in earning capacity created by disabilities not capable of being classified under the specific disability schedule."

See, also, Fox v. Brown, 176 Okla. 201,

55 P.2d 129; Shawnee Cotton Oil Co. v. Bumgarner, 180 Okla. 103, 67 P.2d 959.

As heretofore stated, the commission found that the permanent partial disability of respondent was "independent of and in addition to the loss and/or loss of use of the foot and leg." There is competent evidence to support such finding and, under the rule announced in the case of Eubanks v. Barnsdall Oil Co., supra, the award was properly entered.

Complaint is made of the commission's finding relating to respondent's decreased earning capacity. In this connection it is noted that the award for permanent partial disability was fixed at $8 per week, which is the minimum award, under the provisions of subsection 5, section 13356, O. S. 1931 (85 Okla. Stat. Ann. sec. 22). There is evidence of a decreased earning capacity attributable to respondent's general disability. The extent of the decrease is immaterial, since respondent was given the minimum award.

The evidence is amply sufficient to sustain the findings and award for temporary total disability and the 10 per cent. loss of the use of the left leg.

The award is sustained.

RILEY, CORN, HURST, and DAVISON, JJ., concur. BAYLESS, C. J., WELCH, V. C. J., and GIBSON and DANNER, JJ., dissent.