H. J. McALESTER, No Insurance, Petitioner,

v.

Jerrold TOOMAN, and the State Industrial Commission, Respondents.

No. 38123.

Supreme Court of Oklahoma.

May 5, 1959.

Denton Gossett, Oklahoma City, for petitioner.

Robert N. Woodard, Jack Gray, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

WILLIAMS, Vice Chief Justice.

On June 7, 1957, Jerrold Tooman, hereinafter referred to as claimant, filed a claim for compensation against Cummings Construction Company and its insurance carrier, Maryland Casualty Company, and H. J. McAlester stating that on May 6, 1957, while in the employ of Cummings Construction Company he sustained an accidental injury consisting of an injury to his right hip. The injury occurred while he was engaged in lifting a sub-frame onto a dump truck causing some permanent disability to his person.

Claimant thereafter dismissed his claim as against Cummings Construction Company and its insurance carrier on the ground that H. J. McAlester was his sole employer at the time he sustained his injury.

The trial judge at the close of the evidence found that on May 6, 1957, claimant while in the employ of H. J. McAlester (referred to as petitioner herein) sustained an accidental injury arising out of and in the course of his hazardous employment resulting in an injury to his hip and as a result thereof sustained a 5 per cent permanent partial disability to his body as a whole for which he is entitled to compensation against his employer, H. J. McAlester, in the sum of $750. The trial judge further found:

"3. That respondent knew of claimant's injury but failed to furnish him medical attention and claimant secured medical care by Dr. George T. Ross, whose bills claimant is entitled to have paid by respondent, H. J. McAlester, in the amount of $77.44 and claimant is also entitled to have paid by said respondent the bill of Dr. L. F. Shryock, in the amount of $12.50 for X-ray.

"4. That at the time of said injury claimant's wages were sufficient to fix his rate of compensation at $35.00 per

week for temporary total disability, and $30.00 per week for permanent partial disability; that as a result of said injury claimant was temporarily totally disabled from May 9, 1957, to July 12, 1957, for which period of time claimant is entitled to compensation for 7 weeks and 5 days in the total amount of $274.17, which amount has not been paid, and on which date temporary total disability ended."

The trial judge on such findings entered an award in favor of claimant and against petitioner in the sum of $274.17 for temporary total disability and awarded him further compensation in the sum of $750 based on 5 per cent permanent partial disability to the body as a whole and ordered and directed that petitioner pay the doctor bills mentioned in finding number three and entered an order denying compensation against Cummings Construction Company and its insurance carrier, Maryland Casualty Company.

The award was sustained on appeal to the Commission en banc.

Petitioner brings the case here for review. His main contention is that the evidence fails to establish that the relationship of employer and employee existed between claimant and petitioner at the time he sustained his alleged injury; that claimant was at that time a mere volunteer and that the alleged injury did not arise out of and in the course of employment.

Claimant in his own behalf testified in substance that on the day he sustained his injury he was employed by H. J. McAlester and had been so employed since the early fall of 1956; that his general work consisted of driving a truck hauling blow sand or shale or gravel and on occasions did other work for petitioner; that he was paid by the load at $1 per load and only did work at such times as petitioner had hauling to do; that the morning of May 6, 1957, the day he sustained his injury, he reported for work and hauled two loads of blow sand; that then he was stopped by petitioner from further hauling and requested by him to come with him and

help him lift a sub-frame off (on) a dump truck; that the truck was then located at Shaklee's Machine Shop in Enid, Oklahoma; that he thereafter went to the machine shop and assisted petitioner in loading the sub-frame on the dump truck and in so doing sustained an injury to his hip; that he however received no extra pay for doing this work. He also testified that several other employees assisted in placing the sub-frame on the truck.

Claimant said he notified petitioner twice on the same day that he had hurt his hip, but did not then request medical treatment; that he was not sent to a doctor. He thereafter and on the 13th day of May, called upon Dr. R at Enid for treatment. The doctor examined him and told him he was suffering from a sprain and gave him some shots and recommended heat treatments. Claimant stated that the shots were given him every day thereafter until June 1, 1957, and that he received some further medical treatments from the doctor along through June, July and first half of August. He testified that he quit working for petitioner on May 9, 1957; that he worked 4 days in July and some days in August and in September for other employers, but that he was still disabled during October.

Petitioner testified that there was no work for claimant on the morning of May 6, 1957, but that he did work for him the afternoon of that day hauling shale to Champlin Refinery; that he hauled six loads and was paid $6; that it rained the night before and was too slick to work early in the morning. He also testified that Billy Hiatt also reported for work that morning but did no work until the afternoon of that day. Petitioner testified that on the morning of May 6, 1957, it was necessary for him to go pay some utility bills and a few other bills and to collect some money due him for materials hauled; that he invited Mr. Hiatt and claimant to go with him and stated that some work might show up by afternoon and that possibly they could haul that afternoon.

He further testified that after he had made the rounds that morning he returned

to his home to get a truck on which he wanted to put a sub-frame for a dump bed; that when he got home he told Hiatt and claimant that he would take the truck over to Shaklee's machine shop and put the sub-frame on; that there had to be some welding done on the truck; that Mr. Hiatt and claimant and others helped him put the sub-frame on the truck; that claimant volunteered so to do; that petitioner did not pay Hiatt and claimant any money for any work done that day except hauling they did that evening. He also testified that "Mr. Tooman never mentioned anything wrong with his head at all" and did not request that he furnish medical treatment.

Mr. Hiatt testified that he assisted Mr. Tooman and petitioner in loading the sub-frame on the dump truck; that he was not paid anything for such service. He further testified that he did not consider himself an employee of petitioner while doing such work; that he believed "Mr. McAlester mentioned putting this sub-frame on his truck and asked us if we would help and we volunteered and said we would."

Mr. Maxey testified he was Cummings Construction Company's superintendent and that from the company's records he himself made, none of Mr. McAlester's trucks were used on any job the day in question; it had rained; that he was at Shaklee's and volunteered to help load the sub-frame; they needed an extra man.

Mr. Shaklee testified, "They said they wanted to load it (the sub-frame) so I went out and helped them."

This in substance constitutes the evidence in the case other than the medical evidence.

It is contended by petitioner that the evidence is insufficient to establish that the relationship of employer and employee existed between the parties while engaged in placing the sub-frame on the truck and at the time claimant sustained his alleged injury; that the great weight of the evidence is to the contrary and the Commission was therefore without jurisdiction to award claimant compensation for such injury.

We have many times held, as stated in Landrum v. Ownby, Okl., 290 P.2d 400, 401:

"The relation of employer and employee is a first prerequisite to any award under the compensation act, and such relation is created by contract, either express or implied, or by the unequivocal acts of the parties recognizing the relationship."

In Garr v. Collins, 208 Okl. 113, 253 P.2d 838, 839, we held:

"The relation of employer and employee under our Workmen's Compensation Law may arise by implied contract, such as by knowledge and acquiescence of the employer in the services performed by employee."

See, also, Barnsdall Refining Co. v. State Industrial Commission, 163 Okl. 154, 21 P.2d 749.

Petitioner further contends that where the relationship of employer and employee is an issue in a proceeding to recover compensation under the Workmen's Compensation Law this court will not accept the findings of the State Industrial Commission as conclusive but will review the evidence and make its own independent findings of fact and conclusions as to such issue. We think this contention is correct. We have so held in Sullivan-Anderson Well Servicing Co. v. Sullivan, Okl., 312 P.2d 943; Sullivan v. Sullivan Torpedo Co., Okl., 321 P.2d 412; Williams v. Branum, 192 Okl. 129, 134 P.2d 352. Following this rule we have considered and weighed the evidence and reached the conclusion that the evidence is sufficient to sustain the finding of the Commission that the relation of employer and employee did exist between claimant and petitioner at the time claimant sustained his injury.

The great weight of the evidence shows that claimant at petitioner's request assisted him in placing the sub-frame on the dump truck. Petitioner acquiesced in and accepted his service. We hold such act and conduct on the part of petitioner sufficient to establish an employer and employee re-

lationship between petitioner and claimant and it therefore follows that the injury arose out of and in the course of claimant's employment.

 Petitioner further contends that he is not liable for claimant's medical bills for the reason claimant did not request medical treatment, and he is therefore not required to pay for such treatment. We do not agree. Our statute, 85 O.S.1951 § 14, as far as here material, provides:

"The employer shall promptly provide for an injured employee such medical, surgical or other attendance or treatment, nurse and hospital service, medicine, crutches, and apparatus as may ·be necessary ·during sixty days after· the injury or for such time in excess thereof as in the judgment of the Commission may be required. If the employer fails or neglects to provide the same within a reasonable time after knowledge of the injury, the injured employee, during the period of such neglect or failure, may do so at the expense of the employer; * *."

In Higley v. Schlessman, Okl. 292 P.2d 411, 412, we held:

"Under 85 O.S.1951 § 14, if the employer fails or neglects to provide promptly for an injured employee medical, surgical or other attendance or treatment, nurse and hospital service within a reasonable time after knowledge of the injury, the injured employee during the period of such neglect or failure may do so at the expense of the employer."

The court in that case further said:

"The evidence shows that claimant's employer knew that he had been injured while in their employ at Carnegie, Oklahoma, and had sent him to the hospital for treatment. They also knew that after claimant left the hospital he was in need of further medical treatment. It was therefore not necessary that claimant make specific request or demand upon his employer or its insurance carrier in order to charge them with such treatment, but under the provisions of 85 O.S.1951 § 14, it was their duty to furnish him such treatment without request or demand. * * *"

The court in its opinion refers to and cites in support thereof: Oklahoma Utilities Co. v. Johnson, 179 Okl. 456, 66 P.2d 10; Pine Valley Lumber Co. v. Watson, 184 Okl. 498, 88 P.2d 610; City of Bristow v. Capps, Okl., 261 P.2d 891.

Petitioner in support of his contention cites and relies upon Sheldon Oil Co. v. Thompson, 176 Okl. 511, 56 P.2d 1171; and Skelly Oil Co. v. Skinner, 162 Okl. 150, 19 P.2d 548. These cases hold that the employer is not liable for medical expenses incurred· by employee· where employee does not request medical treatment.

The decisions in the above cases follow our holding in earlier cases which cases are based on Section 7288 C.O.S.1921. The statute as it then existed contained the following provisions:

"* * * The employee shall not be entitled to recover any amount expended by him for such treatment or services unless he shall have requested the employer to furnish the same and the employer shall have refused or neglected to do so. * * *"

This section, however, was amended in 1923 to eliminate the above paragraph. The section as amended appears as 85 O.S.1951 § 14, and reads as above stated. The court in rendering the above decisions relied on by petitioner evidently overlooked the 1923 amendment of Section 7288 C.O.S.1921.

This question is fully discussed in Oklahoma Utilities Co. v. Johnson, supra.

The finding of the Commission that claimant as a result of his injury sustained 5 per cent permanent partial disability to his body as a whole is not challenged by petitioner. We therefore deem it unnecessary to discuss the evidence as to such issue in detail. It is sufficient to say there is ample medical evidence to support such finding.

We conclude that the evidence is sufficient to sustain the findings and award of the State Industrial Commission.

Award sustained.

WELCH, HALLEY, JOHNSON and JACKSON, JJ., concur.