FRANKLIN DRILLING CO. et al. v.
LINDLEY et al.

No. 32433. Oct. 22, 1946.

*173 P. 2d 741.*

George F. Short, Welcome D. Pierson, George E. Fisher, and John N.

Singletary, all of Oklahoma City, for petitioners.

Miller & Goad, of Oklahoma City, and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding brought in this court by petitioners, Franklin Drilling Company and Employers Liability Assurance Corporation, to review an award of the State Industrial Commission awarding compensation to respondent, F. J. Lindley.

The record discloses that claimant F. J. Lindley, respondent herein, on the 21st day of December, 1944, filed with the State Industrial Commission his first notice of injury and claim for compensation against Max B. Miller, in which it is stated that while engaged in the employ of Max B. Miller as a welder he sustained an injury by particles of emery rock lodging in his right eye which resulted in a permanent total loss of vision to that eye. Shortly after filing this claim, Employers Casualty Assurance Corporation, insurance carrier for Max B. Miller, paid claimant temporary compensation. The matter then came before the commission on application for determination of liability and extent thereof. Hearing was had before Trial Commissioner Cheatham, who at the conclusion of all the evidence found the issues in favor of respondent and entered an award awarding him compensation at the rate of $18 per week for 100 weeks, or a total of $1,800, because of permanent total loss of vision to his right eye.

Max B. Miller and his insurance carrier appealed from this award to the commission en banc. Pending the appeal, claimant, respondent herein, filed application to vacate the order entered by the trial commissioner and asked that he be permitted to make Franklin Drilling Company a party to the proceeding; that the evidence discloses that respondent at the time he received his injury was in the employ of both Max B. Mil-

ler and the Franklin Drilling Company. The commission vacated the order and granted respondent permission to make the drilling company a party to the proceeding and remanded the matter to the trial commissioner for a new hearing.

Respondent then made the Franklin Drilling Company a party to the proceeding and filed application for compensation in which he stated that on the 3rd day of October, 1944, while in the employ of Max B. Miller and Franklin Drilling Company and while engaged in their employment as a mechanical laborer, he received an injury to his right eye by reason of a piece of emery rock having lodged therein which resulted in the permanent loss of sight to that eye.

The Franklin Drilling Company filed a response to this claim in which it denied respondent was so injured, and affirmatively alleged that at the time he received the injury he was engaged as a welder under the sole employ of Max B. Miller and that the relation of master and servant had at no time existed and did not exist between it and respondent at the time respondent received his injury.

Upon this issue the case went to trial before Commissioner Cheatham, who, at the conclusion of the evidence, found that on the 3rd day of October, 1944, respondent, while in the employ of both Max B. Miller and Franklin Drilling Company, who were engaged in a hazardous occupation, had sustained an accidental personal injury arising out of and in the course of his employment consisting of a total and permanent loss of vision of his right eye, and awarded him compensation as against both Max B. Miller and Franklin Drilling Company and their insurance carriers at the rate of $18 per week for 100 weeks, or a total of $1,800. All parties appealed from this award to the commission en banc. The commission after due consideration vacated the award and found that respondent had

sustained an injury to his right eye as claimed, but that at the time he sustained such injury he was in the sole employ of Franklin Drilling Company, and entered an award against it and its insurance carrier for compensation at the rate of $18 per week for 100 weeks, or a total of $1,800. The petitioners assert that the evidence is insufficient upon which to base such award. It is their contention that the evidence conclusively shows that respondent at the time he sustained his injury was working for and was in the employ of Max B. Miller; that he was at no time employed by the drilling company and that the relation of master and servant did not exist between them. We think this contention well taken. The evidence offered on behalf of respondent shows that Max B. Miller was the owner of a welding machine which he had erected on a truck. He moved the truck and welding machine to the West Edmond oil field, where petitioner Franklin Drilling Company was engaged in drilling oil wells; that he was employed by Mr. Miller to do the welding; that as compensation for such services he was to be paid and receive 20 percent of the gross proceeds derived from such work; that Mr. Miller entered into a contract with the drilling company to weld drill pipes at the agreed price of $7 per joint; that most of the contracts for welding such pipes were entered into between respondent and Franklin Drilling Company, but such contracts were all taken by respondent in behalf of and in the name of Max B. Miller; that respondent had no interest in the welding machine nor in such contracts; that contracts were also made with the drilling company to do odd jobs of welding; that such contracts were made between respondent and the Franklin Drilling Company; that for such work the drilling company was to pay the usual and customary price per hour for such work, which the evidence shows to be $4.50 per hour; that such odd jobs as were approved by Mr. Miller were taken for him and in his name; that while engaged in his regular work of welding pipe Mr. Stafford, drilling superintendent of the drilling company, told him that the company would have odd jobs of welding to do, and that if any of its employees brought in such jobs, for him to do the work and he would be paid therefor the usual customary price per hour; that Mr. Tomasson, an employee of the drilling company, a few days prior to October 3, 1944, brought in a bumping collar for the purpose of having it welded; that he informed Tomasson that he could not weld the collar without first cleaning it. Mr. Tomasson then advised him that the drilling company had an emery in the boiler room; that he thereupon entered the boiler room, turned on the emery wheel and started cleaning and grinding the collar. The emery wheel was turned on the wrong way and that cuttings from the collar lodged in his right eye resulting in the permanent loss of vision thereof; that Mr. Miller was not present at the time of accepting the collar for welding and that he did not consult him and that Mr. Miller did not approve the making of such contract; that such contract was not made in behalf of Mr. Miller, but was taken and made in respondent's name as his separate contract; that while working on this collar he was working for Franklin Drilling Company and that Franklin Drilling Company and not Mr. Miller was his employer as to that particular odd job. He, however, testified that he expected to be paid by Mr. Miller for the work performed on this job; that he expected to receive as his compensation therefor 20 per cent of the amount received in accordance with the terms of the contract of employment made and entered into between him and Mr. Miller at the time he was employed; that after he received his injury Mr. Miller completed the job of welding the pipe and presented his bill therefor to the Franklin Drilling Company charging $4.50 per hour for such work, including the time for which respondent worked on that job; that the drilling company paid Mr. Miller for such work and that Mr. Mil-

ler paid him 20 per cent thereof; that he at no time had expected to receive from the Franklin Drilling Company for his services rendered in cleaning and welding the collar the total amount agreed upon under the contract.

The above testimony of respondent is in all material respects corroborated by Max B. Miller.

Mr. Stafford, drilling superintendent of the drilling company, testified that respondent was at no time employed by the Franklin Drilling Company and that he was never on its pay roll; that it paid Mr. Miller for all welding jobs whether welding pipe or other jobs or whether the work was done by Mr. Miller or by respondent. Mr. Stafford admitted that he had spoken to respondent relative to doing odd jobs of welding as testified to by respondent, but that in speaking to him relative to such jobs he was speaking to him as an employee of Miller; that he appeared to be the man in charge of the welding machine and was personally doing most of the welding.

The record shows that Max Miller had provided insurance for his employees as provided by the Workmen's Compensation Act and that he had for his insurance carrier Employers Casualty Company.

Respondent concedes that while doing regular contract work welding drill pipes he was in the employ of Mr. Miller, but he contends that the evidence is in conflict as to who his employer was while doing odd jobs welding; that the evidence of respondent is sufficient to sustain the finding of the commission that he was, while doing such odd jobs, the employee of petitioner Franklin Drilling Company and not Max B. Miller, and that this court is bound by such finding. We do not agree. We have on different occasions said when the relation of employer and employee is denied in a proceeding to recover compensation under the Workmen's Compensation Act, this court on review will as a matter of law determine the sufficiency of the facts to establish the existence or absence of such relation. Reeves v. Muskogee Cotton Oil Co., 187 Okla. 539, 104 P. 2d 443; Sartin v. State Industrial Commission, 183 Okla. 268, 81 P. 2d 306.

When the evidence in this case is taken and considered as a whole, the conclusion cannot be escaped that respondent at the time he received his injury was in the sole employ of Max B. Miller and was at no time employed by Franklin Drilling Company. While respondent testified that the contract to weld the collar was taken in his name and was his separate contract, and that he was, as to the work performed on such contract, the employee of the Franklin Drilling Company, yet he testified that while working on such job Mr. Miller was his employer in the sense that he was his paymaster; that he expected to be paid and was paid by him for such work in accordance with the terms of his contract of employment entered into between him and Mr. Miller at the time he was employed; that Mr. Miller collected from the Franklin Drilling Company pay for such work and paid him 20 per cent of the proceeds thereof.

It is further asserted by respondent that although he might have been an employee of Mr. Miller while engaged in doing odd jobs of welding, he did not sustain his injury while engaged in such work; that he sustained such injury while engaged in working on the emery wheel; that the emery wheel belonged to the drilling company and not to Miller; that he was requested and directed to use the emery wheel by an employee of the drilling company; that he was employed to do such work by the drilling company and that the award was under this theory properly entered against it. This contention cannot be sustained. The evidence discloses that the emery wheel was used for the purpose of cleaning the collar preparatory to welding; that the cleaning was merely incident to the welding; moreover, the evidence

failed to show that respondent was employed by Franklin Drilling Company or directed by it to use the emery wheel for the purpose of cleaning the collar. The evidence shows that Mr. Tomasson brought the collar to respondent for the purpose of having him weld it. He was then informed and advised by respondent that the collar could not be welded without first being cleaned. Respondent was then informed by Tomasson that the drilling company had an emery wheel in the boiler room; that respondent, upon obtaining such information, voluntarily entered the boiler room, turned on the emery wheel and proceeded to clean the collar. He was at no time requested or directed so to do by any employee of the Franklin Drilling Company. Under this evidence it cannot be said that respondent was hired and employed by the company to use the emery wheel for the purpose of cleaning the collar. The fact the drilling company by and through its employee loaned respondent the emery wheel and permitted him to use the same for the purpose of cleaning the collar preparatory to welding does not in itself constitute sufficient evidence upon which to base a finding that respondent was specially hired and employed by the drilling company to do this particular piece of work.

Respondent has wholly failed to show that the relation of master and servant existed between him and petitioner Franklin Drilling Company at the time he sustained his injury. The commission was, therefore, without jurisdiction to award him compensation against petitioner Franklin Drilling Company and its insurance carrier.

The award is vacated and the cause remanded for further proceedings not inconsistent with the views herein expressed.

GIBSON, C.J., HURST, V.C.J., and OSBORN, BAYLESS, and WELCH, JJ., concur.