NICHOLS v. STATE INDUSTRIAL COMMISSION et al.

No. 35420. Sept. 30, 1952.

*248 P. 2d 616.*

168

Jacob B. Moore and H. A. Ledbetter, Ardmore, for petitioner.

Butler, Rinehart & Morrison, Oklahoma City, for respondents.

DAVISON, J. This is an original proceeding in this court to review an order of the State Industrial Commission denying Delphia Nichols, for herself and on behalf of Byron Lyndall Nichols, Dale Gordon Nichols, Leona Ann Nichols, and Anita Diann Nichols, as claimant, compensation for the death by electrocution of her husband, Byron Nichols, the father of her said children, against his alleged employer, Ward S. Merrick and his insurance carrier, Consolidated Underwriters. The parties will be referred to as they appeared before the commission.

The only question presented for determination is: Was the deceased, Byron Nichols, an employee of Ward S. Merrick, respondent, within the meaning of the Workmen's Compensation Law? Facts not having a bearing on that question are relatively unimportant.

Claimant testified that her husband died on June 19, 1951, while working for respondent; that from the records she kept on her husband's business, she made out and mailed to respondent a statement for $129 for work done for him by her husband during the month of June and that the account was paid by Merrick by check; that her husband did business as Nichols Neon Electric Service, having a shop or storage space, a pick-up truck and miscellaneous tools; that he did electrical work for any one who called for his services charging them $3 for each hour worked and billing them the first of each month for services rendered during the preceding calendar month, in the same manner as was done in the instant case for Mr. Merrick; that he had a social security number, but that no one for whom he worked ever withheld, so far as she knew, any amount from what was due for his services.

Except for a statement from the doctor that Nichols' death resulted from electrocution, claimant produced the testimony of only one witness, other than herself. He lived and worked near where decedent met death. He testified that about fifteen minutes before the accident he saw the deceased and an employee of Mr. Merrick drive, in Nichols' pick-up truck, along a road adjoining the north boundary line of one of Merrick's oil leases, to a pole

from which an electric line led off in the direction of the lease; that two other employees of respondent also came up to the pole; that Nichols put on his climbing gear, climbed up the pole, removed a fuse from the electric line, started to put in a new one when "we heard a buzz and he just went stiff" and then fell.

On cross-examination, the witness testified that he was field superintendent for another oil operator who had leases across the road from those of Merrick; that on occasion, when in need of the services of an electrician, he had called Nichols; that Nichols was paid on an hourly basis or by the job; that the only direction which would be given Nichols was "what I wanted done and when I wanted the job finished."

The theory upon which claimant contends she is entitled to recover upon this meager evidence stated in her brief, filed herein, as follows:

" * * * Nichols came to this pole where he was electrocuted with Hurst, who was an employee of Merrick. Hurst was present at the trial but did not take the witness stand. Neither did the other three employees of Merrick who were present; nor did Mr. Merrick take the witness stand. Someone could have told about the employment of Nichols; if he had been employed they could have given the contract or the arrangement that they had with Nichols to do this service, but they supinely set back and didn't see fit to do so. And as held in Oklahoma City Construction Company v. Peppard, supra, the presumption is that if they had taken the witness stand the evidence would have been against the respondents.

"I think it is a well-known fact that any person having electrical work done has supervision over the electrician, especially if there is no written contract; but it is the custom, when you have an independent contractor, to have a written contract. The Court must remember that the burden was on the respondents to show what kind of contract they had. This they have failed to show.

"There was no testimony in the record to show that the employment of Nichols by Ward Merrick was solely for Ward Merrick, and there is no testimony in the record to show the control that was exercised over Nichols in the method and manner of performing the work, and as stated before, there is no evidence in this record of *the nature of the contract, whether written or oral.*"

The evidence submitted by respondent consisted primarily of the testimony of the field superintendent for respondent. He testified that he had been employed by respondent for some 22 years and, as field superintendent, had charge of all employees; that there was no electrician on the payroll, but when work of that character needed to be done he would call an electrical contractor, Mr. Nichols or others; that when the job was one of installation, he would merely call Nichols and tell him that electrical power was needed at a certain lease and would give no further direction; that he was not on the property the day Nichols met his death and did not know who had called him, but that the day before there had been a storm which tore down some of the electrical lines and he had personally called for Nichols but had not been able to reach him; that he approved and paid the bill for services which claimant had sent him; that the electric pole in question was in a public highway and belonged to the O. G. & E. Co. as did the main electric line and the secondary line leading off to the property of Merrick.

Claimant takes the position that she is similarly situated to the plaintiff in the case of Oklahoma City Construction Co. v. Peppard, 43 Okla. 121, 140 P. 1084. In that case, the plaintiff sought damages for the death of her husband while employed by the construction company engaged in building the Skirvin Hotel in Oklahoma City, Oklahoma, for Mr. Skirvin, one of the defendants. This latter named defendant sought to escape liability for damages resulting from negligence of decedent's employer

upon the theory that said employer was an independent contractor. Therein it was held that:

"Every person who is found performing the work of another is presumed to be in the employment of the person whose work is being done, and if the facts be such as to exempt the owner of the property improved, or the persons for whom the work is being performed, from liability for the acts of those performing such work, it devolves upon him who claims such exemption to make proof of the terms of the contract showing that the relation of master and servant did not exist."

The situation in the reported case is materially different from that in the case at bar. First and foremost, the reported case is one to recover damages whereas the instant one is a special proceeding under the provisions of the Workmen's Compensation Law. Secondly, in the instant case, deceased was not working on or with the property of the respondent. In the third place, in the reported case, the contract, which was determinative of the relationship, was between the employer of deceased and the owner of the premises where the work was being done, while in the instant case the contract in question was between the deceased and his employer and was the one upon which claimant had to rely to make her own case. The question in the case at bar is whether that contract of employment created a master and servant relationship or that of principal and independent contractor.

In the case of Scott v. Board of County Com'rs of Garvin County, 189 Okla. 601, 119 P. 2d 56, it was said,

"The relation of employer and employee is a first prerequisite to any award under the provisions of the Workmen's Compensation Act (see Mastin v. Black, 176 Okla. 46, 54 P. 2d 399; Trustees of Masonic Lodge of Elk City v. Smith, 161 Okla. 200, 17 P. 2d 430), and such relation is created either by contract, express or implied, or the unequivocal acts of the parties which recognize the relationship (Campbell

Oil Co. v. Elledge, 177 Okla. 601, 61 P. 2d 223). * * *"

And in the case of Ponca Salvage Iron & Metal Co. v. Goldsmith, 159 Okla. 203, 14 P. 2d 1106, this court held that:

" * * * before one is entitled to the liberal construction of the Workmen's Compensation Law (Comp. St. 1921, section 7282 et seq., as amended) he must be held to strict proof that he is in a class embraced within the provisions of the law and that nothing can be presumed or inferred in this respect. In other words, there must be more than an inference or presumption that the relation of master and servant exists. Direct proof of this relationship is required at the time of the accidental personal injury,"

which is in harmony with the earlier opinions in the cases of Moore and Gleason v. Taylor, 97 Okla. 193, 223 P. 611; Hamilton v. Randall, 136 Okla. 170, 276 P. 705, and Mastin v. Black, 176 Okla. 46, 54 P. 2d 399.

The same rules were held to apply under the Workmen's Compensation Law in situations similar to that of Oklahoma City Const. Co. v. Peppard, supra, in the cases of Baker Ice Machine Co. v. Pinnick, 167 Okla. 493, 30 P. 2d 908, and Franklin Drilling Co. v. Lindley, 197 Okla. 609, 173 P. 2d 741.

As to the relationship between claimant's decedent and the respondent in the case before us, the situation in the case of Hobart Lumber Co. v. Fells, 190 Okla. 106, 122 P. 2d 390, is almost identical. The facts in the reported case were stated as follows, in the syllabus:

"Claimant, an itinerant knife and scissors sharpener who had formerly been a machinist, was employed by a lumber company to place a machine driven saw in good working order. He exercised his own judgment as to what repairs were necessary, and how they were to be effected. He furnished his own tools, and was not controlled or directed by the company except that he was told to have any necessary shop work done at a certain machine shop and charged to the company. He was

paid 50 cents per hour because of his inability to fix a contract price for the job, but was not placed on the company payroll, and was not to be paid until the work was completed."

In reasoning that the employment was one of an independent contractor, this court said:

" * * * It is apparent from the testimony of both claimant and employer that both understood that claimant was employed to produce a result, the repairing of the machine so that it would function properly, by his own methods and peculiar skill, free from supervision or control, and that the nature of the employment was well known to both, and that neither believed or intended that claimant should become an employee of the company in the commonly accepted meaning of that term. Both claimant and the company understood the reason why claimant was to be paid on an hourly basis for this particular job, instead of a lump sum. * * *"

That statement is applicable to the case at bar.

It is always a regrettable occurrence when a young man with a family loses his life, but no recovery can be had therefor under the provisions of the Workmen's Compensation Act unless he was within the class embraced within its terms. This court has, without exception, always adhered to the rule that the burden of proving that he was in the class so embraced was upon the injured claimant. The rule applies in the same way where the injuries result in death and the claimant is the person entitled to maintain the proceeding for death benefits. The claimant herein not only failed to discharge the burden of establishing a master-servant relationship, but the uncontradicted evidence fixes the status of Nichols as that of an independent contractor, and the commission was warranted in so holding and denying claimant an award.

The order is sustained.

HALLEY, V.C.J., and WELCH, GIBSON, O'NEAL, and BINGAMAN, JJ., concur.