In the Matter of the death of Earl M. MITCHAM.

Ruth MITCHAM, Executrix, Petitioner,

v.

AMERICAN TIMBER TREATING CORPORATION, and State Insurance Fund, Respondents.

No. 39122.

Supreme Court of Oklahoma.

Jan. 16, 1962.

Savage, Gibson, Benefield & Shelton, Oklahoma City, for petitioner.

Lee Welch, Antlers, Mont R. Powell, Mary Elizabeth Cox, Oklahoma City, Mac Q. Williamson, Atty. Gen., for respondents.

IRWIN, Justice.

Ruth M. Mitcham, widow of Earl M. Mitcham, hereinafter referred to as Claimant, commenced this proceeding before the State Industrial Court against American Timber Treating Corporation, hereinafter called Corporation, and its insurance carrier, State Insurance Fund, to recover for the death of her husband under the death benefit provisions of the Workmen's Compensation Act, 85 O.S.1951 § 1 et seq. After a full and complete hearing an award was denied and this proceeding is to review the order denying the award.

■ The sole issue presented for consideration of this court is the alleged error of the State Industrial Court in finding that the relation of employer and employee did not exist at the time of the death of Earl M. Mitcham. In the case of Franklin Drilling Co. v. Lindley, 197 Okl. 609, 173 P.2d 741, we held:

"When the relation of employer and employee is denied in a proceeding to recover compensation under the Workmen's Compensation Act, this court on review will as a matter of law determine the sufficiency of the facts to establish the existence or absence of such relation."

In this connection see also McAlester v. Tooman, Okl., 338 P.2d 1083, and Sullivan v. Sullivan Torpedo Co., Okl., 321 P.2d 412.

■ In reviewing the evidence we will take into consideration our holding in the case of Marby Construction Co. v. Mitchell, Okl., 288 P.2d 1108, wherein we held:

"In establishing his right to workmen's compensation benefits a claimant is not restricted to direct evidence but may also use circumstantial evidence that is not so certain as to exclude every reasonable conclusion other than the one arrived at by the trial tribunal."

See also Eason Oil Co. v. Kerns, Okl., 353 P.2d 471 and Young v. Neely, Okl., 353 P.2d 111.

■ Earl M. Mitcham, husband of claimant, died on March 20, 1959, as the result of an automobile accident. Prior to the week beginning Sunday, March 15th, negotiations were commenced by representatives of the corporation to employ Earl M. Mitcham. Herbert A. Day, the president and general manager of the corporation had the final say as to employment of any person. Although Day, at the hearing before the trial court, denied that final arrangements had been made for Mitcham to enter employment on March 23, 1959, he admitted in a deposition taken prior to the hearing that Mitcham was to start work on March 23rd as a public relations man and purchaser of posts and poles.

Roy Sikes, County Judge of Little River County, Arkansas testified Earl Mitcham called him from Hugo and made arrangements to meet him in Foreman, Arkansas on Tuesday the 17th. This telephone call was charged to and paid by the corporation. Mitcham drove to Foreman, Arkansas and furnished Sikes with a price list and talked to him about his producing poles and posts and selling them to the corporation. He also talked to D. A. Moore on the same trip, along the same line and gave Moore a price list. On this same trip he drove to America, Oklahoma and talked to Hugh Spencer along the same line and left a price list with him. On this list Mitcham wrote on the back thereof "Earl Mitcham, American Creosote Co., Hugo, Oklahoma, Phone 99". The phone number is the one assigned to the corporation at its plant. D. A. Moore and Hugh Spencer both testified that Mitcham was driving a Ford "Ranchero" owned by the corporation and usually driven by Herbert A. Day. On March 14th, respondent issued a check to Mitcham for the sum of $150.00, which check was cashed by Mitcham. On the face of the check is written the words "advance on payment". On March 17th, a check in the sum of $75.00 was issued to Mitcham by the corporation which had no notation on the face

thereof. The Secretary Treasurer of the corporation testified the check for $150.00 was advance payment on poles and so charged on the books of the company and the check for $75.00 was charged on the books as "contract" labor.

On March 20th, Hugh Spencer, whom Mitcham had previously contacted, called Mitcham collect from America, and the call was charged to phone #99 and was paid by the corporation. On that same day and prior to the noon hour, Mitcham purchased a post hole digger and level at Hacker Hardware & Farm Supply, Hugo, and the same was charged to and paid by the corporation.

Reginald Williams testified he is a farmer and rancher; that he resides in Idabel; that Day had contacted him and suggested that he go into the business of cutting, trimming and peeling poles and posts and selling them to the company; that Day told him the company owned a pole peeling machine located in Albion, Oklahoma, and any time Williams would come by, Day would take him to see the machine. That he had never been in that type of business before; that he had never seen that kind of a machine and Day wanted to show him the machine and how it operated; that his sole purpose in making the trip to Albion was to see the machine and learn something about it. On March 20th, he and his partner Simpson drove to the plant in Hugo and contacted Day about going to Albion; that Day said he was too busy to go that day but that Earl Mitcham wanted to see the machine and *"that Earl would go with me."* That Mitcham was not at the plant and Day got in the car with them and they drove to town where Day located Mitcham. They took Day back to the plant and Mitcham followed in his pickup, parked it and got in his car and they started on the trip to Albion. It was on this trip that Mitcham was killed.

On behalf of the corporation, Day testified that the two checks to Mitcham were for advances on poles and posts which Mitcham had delivered to the yard and emphatically denied that the $75.00 check was for contract labor. He admitted he loaned the company car that he usually drove to Mitcham but that Mitcham borrowed it to take care of some personal business while his car was out of commission. He denied that Mitcham had made a trip to Foreman, Arkansas, to America, or to the home of D. A. Moore on business for the company; that the price lists, referred to in the testimony were not price lists of the company. He further denied any knowledge of phone calls made by Mitcham and charged to the company phone or that he had any knowledge of Spencer calling Mitcham collect or that the call was charged to the company phone. He denied Mitcham had any authority to purchase any articles from the hardware company and to charge same to the corporation or that he had knowledge that such had been done. Mitcham was not shown on any payroll of corporation. While there was other testimony we do not consider it of sufficient importance to abstract same.

We believe the testimony of Reginald Williams is extremely important in arriving at a proper conclusion herein. He was a stranger to this type of business and to see the machine without someone to explain its operation would be of little assistance to him. It is apparent when he arrived in Hugo on the 20th he expected Day to go with him and explain the operation of the machine as Day had told him he would do. Day at that time knew Mitcham was well versed in cutting, trimming and pealing poles and posts and was well acquainted with the operation of trimming and peeling machines and after telling Williams he could not go that day, his statement that *"Earl would go with me"* is very persuasive that he considered Mitcham subject to call for duty during that week. It is to be remembered that this statement, attributed to Day, was made without first talking to Mitcham, but was made as a positive statement of fact that Mitcham would go and Day specifically contacted Mitcham for this purpose.

Taking into consideration all the testimony of the witnesses for both claimant and the company, all known facts and circum-

stances and the conclusions that reasonable men could draw therefrom, we find and hold that Earl Mitcham was on special duty during the work week beginning March 16th, 1959, and performed such duties as were assigned to him; that at the time of the fatal accident he was on a special mission at the direction of and for the benefit of the company.

The order denying an award to claimant is reversed, the cause is remanded to the Industrial Court with instructions to enter an award in favor of the claimant.

WILLIAMS, C. J., BLACKBIRD, V. C. J., and DAVISON and BERRY, JJ., concur.

HALLEY, JOHNSON and JACKSON, JJ., dissent.