**Jim BROWN, d/b/a R & R Builders, Petitioner,**

v.

**Richard D. BURKETT and James Figgins, Respondents.**

**No. 67071.**

Supreme Court of Oklahoma.

May 3, 1988.

Rodney J. Heggy, Cheek, Cheek, & Cheek, Oklahoma City, for petitioner, Jim Brown, d/b/a R & R Builders.

Rose M.J. Sloan, John S. Oldfield, Jr., Oldfield and Coker, Oklahoma City, for respondent, James Figgins.

J. Mike Lawter, and Jamie Pitts, Lawter & Pitts, Inc., Oklahoma City, for respondent, Richard D. Burkett.

OPALA, Justice.

The dispositive question on review[1] is whether the petitioner was the claimant's employer at the time of the injury in suit. We answer in the negative and vacate the award.

Richard D. Burkett [claimant] was injured when he fell off the roof of a house where he was working as a carpenter and electrician. James Figgins [owner] owned the house. Jim Brown [petitioner or Brown] was one of several individuals who performed various tasks necessary to complete a remodeling project. Brown did skilled labor and also acted as general supervisor.

Claimant sought benefits under the Workers' Compensation Act[2] [Act] for injuries he sustained in the fall. He asserted employee status vis-a-vis the petitioner, the owner, either or both. The trial tribunal found the claimant was petitioner's employee alone and allowed him statutory benefits.[3] The trial judge's decision was affirmed on appeal to a three-judge review panel.[4]

 Master-servant relationship is a *jurisdictional* prerequisite for a compensation award.[5] When the claimant's employee status is in contest, this court will review the record *de novo* to determine the legal

relationship in existence when the injury occurred.[6]

The facts are not in dispute. During a friendly chance meeting between two neighbors on a country road, Brown asked the claimant if he would be interested in working on the owner's remodeling project. The claimant, who had never before worked with or for the petitioner, knew of the latter's skills as a carpenter, electrician, and general construction laborer. Grateful for the opportunity to work, the claimant accepted. Brown had already been on the job for some time, and the owner had others hired to help.

Remuneration for the claimant's services consisted of $6.00 and $7.00 per hour, depending on the skills required for a specific task. Brown was paid $8.00 per hour. For convenience, the claimant was paid directly by the petitioner, who kept a record of the hours worked by several laborers including himself. By mutual agreement no withholding or other taxes were deducted from any of the wages paid. The owner usually supplied the necessary materials himself, but when urgent need arose, Brown would make the purchase.

Every week or so the owner himself inspected the progress of work. Changes he desired were often made by instructing the petitioner, who also had drawn the blueprints for the project. Although Brown

---

1. This proceeding for review was earlier reached for disposition of a jurisdictional question. *See Brown v. Burkett*, Okl., 750 P.2d 481 [1988].

2. 85 O.S.1981 §§ 1 et seq.

3. Owner was found to have been exempt from liability under 85 O.S.Supp.1985 § 11(3), whose pertinent terms provide:

 "*Where work is performed on a single family residential dwelling or its premises occupied by the owner ... such owner ... shall not be liable for compensation under the Workers' Compensation Act.* Such owner ... shall not be liable to the employee of any independent contractor or subcontractor, where applicable...." [Emphasis added.]

4. Because the three-judge panel's intra-court re-examination of the trial judge's disposition replaces by substitution the earlier decisional

stage, the panel's order alone stands for appellate review as the Workers' Compensation Court's order. *Parks v. Norman Mun. Hosp.*, 684 P.2d 548, 552 [1984].

5. *Fluor Engineers & Contractors, Inc. v. Kessler*, Okl., 561 P.2d 72, 74 [1977]; *Nichols v. State Industrial Commission*, 207 Okl. 167, 248 P.2d 616, 619 [1952]; *Scott v. Board of Com'rs of Garvin County*, 189 Okl. 601, 119 P.2d 56, 57 [1941].

6. *Beall v. Altus Public School Dist.*, Okl., 632 P.2d 400, 401 [1981]; *Leonhardt Enterprises v. Houseman*, Okl., 562 P.2d 515, 517 [1977]; *Thompson v. Braselton Federal Insul. & Bldg. M. Co.*, Okl., 223 P.2d 527, 528 [1950].
 Because the error sought to be corrected is one from resolution of a *jurisdictional* fact issue, no deferential standard of review may be accorded here to the trial tribunal's finding of employment status. On non-jurisdictional fact issues we accept as binding the trial tribunal findings, if they are supported by any competent evi-

told the laborers they were his employees, the claimant knew that both he and the petitioner were subject to the owner's specific directions and control, and that *none* of the workers had complete and independent authority. Admitting he worked *with* the petitioner "side by side", the claimant was never instructed by Brown on *how* his work should be performed.

Finally, while the petitioner did use checks, business cards and stationery with the name, R & R Builders, he made no profit *per se* from paying wages or purchasing materials.[7] The owner fully *reimbursed* him for those expenditures and compensated him only for his *time* on the job, both for doing skilled labor and providing management services. The payee of the checks drawn by the owner was R & R Builders.

■ The claimant argues the evidence establishes the requisite employment relationship between himself and the petitioner. Because the amount and method of paying his wages were negotiated through the petitioner, and the kind of work required was identical to that for which R & R Builders was known, the claimant urges he was "hired" by the petitioner. He further relies on his own testimony that he always believed he was "working for" the petitioner, who instructed him on "what to do pertaining to the remodeling." We disagree with the claimant's conclusion. His assessment of the evidence accentuates the *form* in which the parties dealt and ignores the *substance* of their interaction.

Employment is statutorily defined to include labor in a trade or business *"carried on by an employer for pecuniary gain ...;"*[8] the term "wages" means "the money rate at which the service rendered is recompensed ... *[by] the employer."*[9] [Emphasis added.] An employment relationship—within the purview of the Act—necessarily contemplates that one who claims employee status must have *in fact* been paid by the employer.[10] On the record before us it is the owner who actually paid the claimant's wages. Every check received from the petitioner was drawn on the owner's behalf. As between Brown and the owner, an agency relationship was in existence. During the time he worked with the claimant the petitioner did not appear to conduct any business for pecuniary gain. Brown's accounting to another for the hours worked and his receipt of reimbursement for wages paid in irregular amounts and at varying intervals certainly is inconsistent with the method an employer would follow in compensating his workers.[11]

The claimant further argues, in essence, that the petitioner was an independent contractor. Brown could be so classified, if he contracted with the owner to work on a particular project according to his personal or unique methods, free from the owner's control and instruction, except as to the result or product.[12] The decisive legal test for an independent contractor is whether the person for whom services are rendered has the right to control the details of the work or performance.[13] We have found no persuasive evidence to support the claimant's position. The fact that no taxes were deducted from any of the checks tends to support the inference the *claimant* was an independent contractor.[14]

While the Workers' Compensation Act is to be construed liberally in favor of those

dence. *Parks v. Norman Municipal Hospital, supra* note 4.

7. *Cf. Mabee v. McWaters,* 151 Okl. 10, 1 P.2d 636, 637 [1931], where a sign appearing on the respondent's truck did not prove that his driver had the authority to hire another to work with him. The facts and circumstances in that case were held insufficient to establish the master-servant relationship.

8. 85 O.S.Supp.1986 § 3(5).

9. 85 O.S.Supp.1986 § 3(8).

10. 85 O.S.Supp.1986 § 3(8); *Bowen v. McHenry,* 201 Okl. 151, 202 P.2d 987 [1949] (syllabus).

11. *See Cannan v. Drane,* Okl., 477 P.2d 687, 691 [1970].

12. *See Herron Lumber Company v. Horn,* Okl., 446 P.2d 53, 54 [1968] (syllabus).

13. *Herron Lumber Company v. Horn, supra* note 12; *Union Mutual Insurance Company v. Hill,* Okl., 356 P.2d 336, 337 [1960].

14. *Cannan v. Drane, supra* note 11 at 691–692.

entitled to benefits, claimants must bear the burden of demonstrating, by competent evidence persuasive to the trier, that they are within a protected class.[15] Within the Act's contemplation, employment is a mixed notion of *contract* and *status-* contract, because it generally results from a consensual inception; status, because at times it may be imposed *involuntarily* as a legal consequence that attaches by force of law to the parties' conduct.[16] On the record in this case, we decline to impose employer status upon Brown.

An employer is one who maintains a business and hires workers to perform services *that are connected with one's business.*[17] The services performed by both the claimant and the petitioner directly benefited the owner. The petitioner was, at the time of the claimant's injury, conducting *no* business or trade that would require him to hire anyone. The fact that the claimant was subject to the control of another—the owner—negates his claim to employee status *vis-a-vis* the petitioner.[18] Even if Brown exercised some control over the details of the claimant's work, the evidence here falls short of an employment relationship between them. On the whole, the petitioner acted not as an independent contractor, but rather within the purview of his agency for the owner.

Nor can we say there is sufficient evidence that Brown voluntarily assumed employer status. His statements to other workers indicating they were "his" employees does not *ipso facto* establish a relationship of that character. The record convinces us that they understood his authority stemmed solely from the owner.

We hence hold that *on the record before us* the claimant failed to establish his employee status *vis-a-vis* the petitioner. Absent here is proof to show that the petitioner meets the statutory definition of employer and that he himself had the quantum of control essential for a master-servant relationship.

Award vacated and cause remanded with directions to deny the claim.

DOOLIN, C.J., HARGRAVE, V.C.J., and HODGES and LAVENDER, JJ., concur.

ALMA WILSON, KAUGER and SUMMERS, JJ., concur in result.

SIMMS, J., dissents.

---

15. *Beall v. Altus Public School District, supra* note 6 at 403.

16. *Brewer v. Bama Pie, Inc.,* Okl., 390 P.2d 500, 502 [1964].

17. 85 O.S.Supp.1986 § 3(5); *Standard Savings & Loan Ass'n v. Whitney,* 184 Okl. 190, 86 P.2d 298, 301 [1939].

18. *See Robinson v. Board of County Commissioners,* Okl., 289 P.2d 668, 671 [1955].