2013 OK CIV APP 14

**UNIQUE PAINTING & REMODELING
and CompSource, Petitioners,**

v.

**Bobby PORTERFIELD and The
Workers' Compensation
Court, Respondents.**

**No. 110,807.**

Court of Civil Appeals of Oklahoma,
Division No. 1.

Dec. 20, 2012.

Bryan N.B. King, Heather A. Lehman, Oklahoma City, OK, for Petitioners.

Daniel M. Davis, Edward W. Grimes, Oklahoma City, OK, for Respondents.

## BRIAN JACK GOREE, Judge.

¶ 1 Petitioners, Unique Painting & Remodeling and CompSource Oklahoma (collectively Employer), seek review of an order of a three-judge panel of the Workers' Compensation Court finding Respondent, Bobby Porterfield (Claimant) was an employee of Employer and not an independent contractor. We sustain the panel's order.

¶ 2 Employer is a painting business owned by Claimant's cousin, Justin Parker. Claimant suffered an injury on June 30, 2011, when he fell from a ladder. He filed a Form 3 notice of claim on August 2, 2011. Employer denied Claimant was an employee, asserting he was an independent contractor. The issue came on for trial on December 1, 2011. The trial court denied compensation, ruling Claimant was an independent contractor based on Claimant's execution of an Affidavit of Exempt Status, absence of direction, and payment by the job. Claimant appealed to a three-judge panel. The panel vacated the decision of the trial court and found Claimant was an employee, and not an independent contractor, of Employer. Employer appeals from this order.

¶ 3 Whether a claimant is an employee under the Workers' Compensation Code is a jurisdictional issue. 85 O.S.2011 § 310; *Brown v. Burkett*, 1988 OK 49, ¶ 4, 755 P.2d 650, 651. We apply a non-deferential de novo standard when reviewing fact questions as to whether an employee/employer relationship existed at the time of the injury. *Swafford v. Sherwin Williams*, 1993 OK 141, 863 P.2d 1215, 1217.

¶ 4 An independent contractor is one who engages to perform a certain service for another, according to his own manner and method, free from control and direction of his employer in all matters connected with the performance of the service, except as to the result of product of the work. *Page v. Hardy*, 1958 OK 283, 334 P.2d 782, 784. In *Page,* the Court listed the factors to be considered in differentiating an independent contractor from an employee:

(a) the nature of the contract between the parties, whether written or oral; (b) the degree of control which, by the agreement, the employer may exercise on the details of the work or the independence enjoyed by the contractor or agent; (c) whether or not the one employed is engaged in a distinct occupation or business and whether he carries on such occupation or business for others; (d) the kind of occupation with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision; (e) the skill required in the particular occupation; (f) whether the employer or the workman supplies the instrumentalities, tools and the place of work for the person doing the work; (g) the length of time for which the person is employed; (h) the method of payment, whether by the time or by the job; (i) whether or not the work is a part of the regular business of the employer; (j) whether or not the parties believe they are creating the relationship of master and servant; and (k) the right of either to terminate the relationship without liability.

¶ 5 No one factor is controlling, and the relationship must be based on the set of facts peculiar to the case. *Swafford,* 863 P.2d at 1217. The decisive legal test for an independent contractor is whether the person for whom services are rendered has the right to control the details of the work or performance. *Brown,* 755 P.2d at 652.

¶ 6 In the present case, Claimant had his own painting business before he went to work for Parker, but his tools and equipment had burned in a fire. He began working for Parker in 2009 at $15.00 per hour. He was one of a crew of men who worked regularly for Parker. Claimant performed any duties Parker assigned him, including painting, preparation, spraying, and masking off. He

also worked at remodel tasks such as electrical outlets and bathtubs. Parker admitted Claimant had no specific specialty and the other members of the crew could all do the same work. If Claimant was sick one day, Parker could cover for him.

¶ 7 Claimant testified Parker could ask him to move from one project to another. Parker could tell him when to take lunch and when to leave, and Parker retained the right to fire Claimant if he desired. Except for Claimant's box knife and putty knife, Parker provided all tools and materials for each job site.

¶ 8 The method and timing for payday changed from time to time but Claimant always earned $15.00 per hour, except for one time where Parker paid extra for finishing a job in one day. At first, Parker supplied forms for his workers to indicate the hours they worked. After that, Parker asked his crew to turn in their time records on Wednesday and he would pay them on Friday. More recently, Parker apparently paid the workers whenever he received payment from the property owner. Parker sometimes paid in cash and sometimes by check. He did not withhold taxes and he provided neither W2s nor 1099s.

¶ 9 Claimant did not have his own transportation and Parker picked him up for work. Parker testified Claimant had no set time for work. Claimant testified his work began whenever Parker came to pick him up. Parker stated Claimant did not work everyday and Claimant was free to, and did, work at another company named Metro Painting. However, Parker admitted this had only occurred a couple of times during the last two years when Parker was short of work and "didn't have anything" for Claimant to do.

¶ 10 The testimony concerning supervision of Claimant's work was disputed at trial. Claimant testified Parker was the "main" supervisor and Parker's father would supervise in Parker's absence. Parker testified that the person on the job site with the most experience is the one who gives the direction, and that person could be Claimant himself.

¶ 11 It was undisputed that Parker did not give Claimant instructions on how to perform the job. In fact, Claimant had more years experience painting than Parker. Parker was at the job sites about half the time; he visited the sites in order to check the status of the work.

¶ 12 Approximately one year after Claimant began work, Parker obtained workers' compensation insurance. He then asked all of his workers to fill out a document entitled Affidavit of Exempt Status Under the Workers' Compensation Act. Claimant signed it April 11, 2011. Claimant admitted the document reflects his status as an independent contractor and that he provided it to Mr. Parker. However, the form was not notarized.

¶ 13 Applying the factors set forth in Page, we begin with the question of degree of control, which the courts have said is the decisive test. Parker did not instruct Claimant on how to perform his job. Parker's visits to the work sites were for the purpose of checking the progress or result of the job, not to control the details of its performance. However, this does not end the inquiry.

¶ 14 The relevant question under the facts of this case is whether Employer had the right to control the details of the work or performance. *Brown*, 755 P.2d at 652. "It is the right to control a servant rather than the exercise of it that serves as a test in fixing the status of an employee." *Chickasha Plumbing Company v. Rogers*, 1961 OK 257, 366 P.2d 410, 413. Chickasha distinguished between the right to control and exercise of that control in the context of determining workers compensation liability where a claimant was alleged to be a loaned servant. In *Tulsa Rig, Reel & Manufacturing Company v. Millsap*, 1980 OK 165, 619 P.2d 625, the court explained, "[I]t makes no difference whether the proprietor to whom the servant is loaned actually exercises his right of control or direction as to the details of the work or simply sets the servant to do what is necessary, trusting to his expert skill for the results." *Millsap*, 619 P.2d at 628. Millsap suggested the analysis is no different from a typical employee/independent contractor dispute. In *Chicago, R.I. & P.Ry. Co. v. Bennett*, 1912 OK 592, 36 Okla. 358, 128 P. 705, the court held, "[T]he test is not whether the defendant did in fact control and direct plaintiff in his work, but is whether it had the right under the contract of employment, taking into account the circumstances

and situation of the parties and the work, to so control and direct him in the work." *Bennett,* 128 P. at 707.

¶ 15 Even though Parker did not give Claimant instructions on how to do his job, we find he retained the right to do so. Claimant was engaged to work as a member of a crew. He performed whatever specific duties were assigned to him. His tasks were broader than painting. The fact that Parker would sometimes pull him off one job and take him to another one demonstrates Parker retained the right to control the work. Similarly, Parker could tell Claimant when to take lunch and when to leave, which is further evidence of control. Parker explained the method he utilized for making sure the crew performed the work properly, "If something is not getting right, the person with the most experience is going to say, you need to fix that." Claimant had more experience than many of the others he worked with, except Parker's father. However, under the record presented in this case, we are persuaded Parker did not relinquish his right to control Claimant's work even if he did not regularly exercise that right. Nearly all of the other factors discussed in Page militate in favor of finding Claimant was an employee and not an independent contractor.

¶ 16 Disputed evidence was admitted on the question of whether the parties believed they were creating an employment or independent contractor relationship. After Claimant had worked for Parker for about a year, Parker asked Claimant and the other workers to sign an Affidavit of Exempt Status Under The Workers' Compensation Act. The form includes an Exempt Status Fact Sheet which defines an independent contractor as, "[o]ne who engages to perform certain services for another, according to his own manner [or] method, free from control and direction of his contractor in all matters connected with the performance of the service, except as to the result or product of the work." Below the definition of independent contractor are eleven statements with accompanying questions designed "to help you decide if you are an independent contractor." The form explains, "No one statement is controlling, and your status is based on all the facts in your situation." The form directs the worker to "check the box" beside any statement that "describes our situation" and instructs the worker not to sign the affidavit "if at least six of the statements below do not describe your business." Claimant checked seven boxes and left four blank. The statements he checked read as follows:

1. The nature of the contract between you and the contractor shows you are independent from the contractor,

3. You are engaged in a distinct occupation or business for others.

4. Your job is the kind of occupation where the work is usually performed by a specialist without supervision, and not under the direction of the contractor.

6. The contractor does not supply the things needed to perform your job such as the tools and the place of work.

7. The length of the job and how long you have worked for the Contractor does not show that you are really an employee.

8. You are paid as a separate contractor, not as an employee.

10. You do not consider yourself an employee of the contractor.

Claimant did not check the box next to the following statement: "The contractor exercises very little control over your work." Claimant indicated on the form he believed he was an independent contractor and not an employee. He signed it but the form was not notarized.

¶ 17 At trial, the Affidavit of Exempt Status was admitted by Employer. Claimant, however, offered testimony opposite to the statements he had checked on the form. In its Order Denying Compensability, the trial court found, "Claimant was an independent contractor based on his execution of Affidavit of Exempt Status declaring he was not an employee. Moreover, the respondent fid (sic) not direct claimant's work and paid him primarily by the job." Following panel review, the Order on Appeal Vacating The Decision of the Trial Court found, "[M]uch, if not all, of the information contained on respondent's exhibit # 2 [Affidavit of Exempt Status] was refuted at trial."

¶ 18 Pursuant to 36 O.S.2011 § 924.4(B), execution of an Affidavit of Ex-

empt Status establishes a rebuttable presumption that the executor is not an employee for workers' compensation purposes. The document entered into evidence does not qualify as an affidavit because it is not under oath. 12 O.S.2011 § 422. Therefore, it fails to establish the presumption that Claimant was not an employee.

¶ 19 Even if the document qualified as an affidavit, contrary evidence was admitted supporting Claimant's status as an employee. A presumption does not shift the burden of proof and a presumption disappears if evidence to the contrary is offered by the opponent. *Walker v. The Telex Corporation,* 1978 OK 13, ¶ 11, 583 P.2d 482, 486.

¶ 20 Based on this record, we conclude Claimant was an employee of Unique Painting & Remodeling and not an independent contractor. The order of the Workers' Compensation Court is SUSTAINED.

BUETTNER, P.J., concurs in result, and JOPLIN, V.C.J., concurs.